ATTORNEY FOR APPELLANT
Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Robyn M. Williamson
Deputy Attorney General
Indianapolis, Indiana

In the

# Indiana Supreme Court

No. 49S00-0407-CR-324

CURTIS COOPER,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

On Direct Appeal from the Marion Superior Court
Criminal Division, No. 49G02-0204-MR-106697
The Honorable Robert Altice, Judge

**October 5, 2006**

**Rucker, Justice.**

A jury convicted Curtis Cooper of murdering Selena Orum and recommended a sentence of life without parole. The trial court followed the jury's recommendation. In this direct appeal Cooper argues that the State engaged in prosecutorial misconduct requiring the reversal of his conviction and sentence. We affirm the conviction but remand for a new sentencing phase of trial.

## Facts and Procedural History

Cooper began dating Selena in March of 2000. On December 30th of that year, they started arguing when Cooper discovered that Selena had been talking to another man. The argument escalated into a physical altercation during which Cooper "grabbed her by her hair, [and] drug her to the top of the stairs. Once they got at the top of the stairs he took his boot and kicked her in her mouth. He then drug her down the stairs by the hair." Tr. at 60. Police apprehended Cooper only after he led them on a high-speed chase at speeds approaching 100 miles per hour. As a result, Cooper was charged and pleaded guilty to resisting law enforcement as a Class D felony and domestic battery as a Class A misdemeanor. On February 19, 2001, Cooper was sentenced to a total term of 545 days, 494 days of which were suspended, and 365 days ordered to be served on probation. See Ex. at 43.

On the evening of April 8, 2001, after discovering some misplaced items in Selena's garage and not being able to reach her on her cell phone, several of Selena's family members filed a missing persons report and police began an investigation. Tr. at 227-34. On April 10, two of Cooper's friends saw what appeared to be Selena's sports utility vehicle in the parking lot of a housing complex. Noting a small hole in the passenger door and observing what appeared to be something covered up in the cargo area, Cooper's friends called the police. Selena's body was discovered in the vehicle wrapped in a blanket. She had been shot five times, twice in her chest, once in her abdomen, and twice in her upper thigh. See id. at 526-39.

About a year later, the State charged Cooper with murder, auto theft as a Class D felony, and possession of a handgun without a license as a Class A misdemeanor. The State also filed a request for life without parole listing as an aggravator that Cooper was on probation for resisting law enforcement at the time the murder was committed. After a four-day jury trial that began May 17, 2004 the jury found Cooper guilty as charged. The following day the jury reconvened for the penalty phase of trial, after which the jury found that Cooper intentionally killed Selena and that the State proved the charged aggravator beyond a reasonable doubt. The jury also found that Cooper's proffered mitigating circumstances were outweighed by the charged aggravator. The jury thus recommended life imprisonment without parole, and the trial court sentenced

Cooper accordingly. Cooper appeals, challenging his conviction and sentence for murder.[1] Pursuant to Indiana Appellate Rule 4(A)(1)(a) this Court has mandatory and exclusive jurisdiction over the appeal.

## Discussion

Pointing to various remarks made by the deputy prosecutors during closing arguments in both the guilt and penalty phases of trial, Cooper complains the State engaged in prosecutorial misconduct. Cooper concedes that he did not object to the prosecutors' remarks but contends they placed him in a position of grave peril thus justifying a new trial.

In reviewing a properly preserved claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. Booher v. State, 773 N.E.2d 814, 817 (Ind. 2000). Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. See Mahla v. State, 496 N.E.2d 568, 572 (Ind. 1986). The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. Coleman v. State, 750 N.E.2d 370, 374 (Ind. 2001).

When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. Dumas v. State, 803 N.E.2d 1113, 1117 (Ind. 2004); Brewer v. State, 605 N.E.2d 181, 182 (Ind. 1993). If the party is not satisfied with the admonishment, then he or she should move for mistrial. Dumas, 803 N.E.2d at 1117. Failure to request an admonishment or to move for mistrial results in waiver. Id. Where a claim of

---

[1] In a two-sentence concluding paragraph Cooper also contends that he is entitled to reversal of his convictions for auto theft and possession of a handgun without a license. See Appellant's Br. at 19. We first observe the record shows the State dismissed the handgun charge following the jury's life without parole verdict. See Tr. at 1165. In any event, because Cooper's contention is supported neither by cogent argument nor citation to authority, it is waived. See Ind. Appellate Rule 46(A)(8)(a) (requiring argument be supported by coherent reasoning with citations to authority); Davis v. State, 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005) (observing that failure to present a cogent argument or citation to authority constitutes waiver of issue for appellate review).

prosecutorial misconduct has not been properly preserved, our standard for review is different from that of a properly preserved claim. More specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. Booher, 773 N.E.2d at 817; see also Johnson v. State, 725 N.E.2d 864, 867 (Ind. 2000) (A party's failure to present a contemporaneous trial objection asserting prosecutorial misconduct results in waiver of appellate review.). Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process . . . present[ing] an undeniable and substantial potential for harm." Benson v. State, 762 N.E.2d 748, 756 (Ind. 2002). Because Cooper contends the prosecution engaged in misconduct in both the guilt and penalty phases of trial, we address each phase separately.

### I. Guilt Phase of Trial

Cooper's complaint concerning this phase of trial is based on the following statements:

> You can tell what kind of person Curtis Cooper is, he's a back shooter and a woman beater. It didn't mean anything to him to shoot Selena in the back, he'd used her as a punching bag before. So why not? Why not? When he shot the life out of her and left her dead there on the ground – Lord only knows where, we'll never find the spot – he silenced her voice.
> . . .
> Whatever lies he tells – and he is a liar, the truth is not in this man, he is a liar.
> . . .
> You know what kind of person Curtis Cooper is. Now I'll admit he's probably one of the finest liars that I've ever heard testify in the courtroom but he's a liar nonetheless and each one of you I know has paid attention and there have been times when I've seen on your faces that you grasp the lie and you've seen how he's attempted to weave his version of the story, into the fabric of this case, into the truth.
> . . .
> From what we know today, we would have predicted that, his behavior was predictable. Look at how he behaved. . . . Well, I'll tell you what, the things that he did reflect on his character. He's

4

an adult, all right? Anything that we do as adults reflects upon our character and it reflects upon what we are capable of. . . . That tells you about his character . . . .

Tr. at 1048-50, 1054. According to Cooper the prosecutor improperly expressed his opinion about the credibility of Cooper as a witness and injected his personal experiences into the trial.

We observe that the prosecutor's remarks were made during the rebuttal phase of closing arguments. In his own closing remarks, defense counsel focused on evidence that he believed supported a claim of self-defense and argued that his client was a credible and believable witness.

Prosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable. Dumas, 803 N.E.2d at 1118; Brown v. State, 746 N.E.2d 63, 68 (Ind. 2001). But not all of the response here is objectionable. First, a prosecutor does not necessarily engage in misconduct by characterizing a defendant as a liar. In Hobson v. State, the "prosecutor gave personal opinions as to the truthfulness of witnesses" when the prosecutor stated to the jury during closing arguments, "I warned you that [the defendants] are liars." 675 N.E.2d 1090, 1095 (Ind. 1996). This Court noted that where evidence introduced at trial indicates that either the defendant was lying or that other witnesses were lying, comments by the prosecutor which merely "pointed out the incongruities in the testimony presented at trial, concluded that someone must not be testifying truthfully, and invited the jury to determine which witness was telling the truth" did not constitute misconduct. Id. at 1096. Rather, "a prosecutor may comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence." Lopez v. State, 527 N.E.2d 1119, 1127 (Ind. 1988).

In this case, evidence introduced at trial suggests that Cooper was not telling the truth about the circumstances surrounding Selena's death and that he felt "threatened" when he confronted Selena in her garage. See Tr. at 918. Cooper testified that Selena was yelling at him, and "that's when, you know, she pulled her gun out . . . ." Id. at 917. According to Cooper, after seeing Selena's gun he "pulled the gun out of [his] jacket and . . . just started shooting." Id. at

5

918. Cooper testified, "Things happened so quickly, you know, because I shot and she turned and went into the car, and she went into the back of the car and that's when she just collapsed." Id. Cooper also testified that after he "didn't see her move" and received no response when checking to see if she was still living, he "just panicked" and drove Selena's car away with Selena in the cargo area. Id. at 919-20.

However, Selena's neighbor testified she witnessed Selena—not Cooper—drive the SUV away from Selena's residence at a very high rate of speed, and that a man was seated in the front passenger seat of the vehicle. Tr. at 134. Cooper could not explain that discrepancy during cross-examination. Id. at 968-69. In addition, Cooper testified that he fired his weapon five times inside Selena's garage. Id. at 958-60. But there were dirt and leaves on Selena's clothing and on the blanket in which she was wrapped, suggesting that she had been shot in another location. When confronted with the fact that no shell casings were found in the garage or any other evidence suggesting a shooting occurred there, Cooper had no explanation. Id. at 960. The record also shows that Cooper gave two lengthy pre-trial statements to the investigator for his defense team.[2] They were not only internally inconsistent but also inconsistent with each other. When confronted on cross-examination with these statements, Cooper claimed either not to have remembered what he told the investigator, or said he lied to the investigator but was telling the truth now. See id. 948-958, 968, 971. In sum, Cooper's testimony was inconsistent with his own prior statements and the testimony of other witnesses, as well as the physical evidence introduced at trial. As a consequence the prosecutor was permitted to argue to the jury that Cooper was not offering truthful testimony to the jury. There was no prosecutorial misconduct on this point.

Second, as for the prosecutor's remark that Cooper is "a back shooter and a woman beater" we observe these remarks were fair commentary on the facts introduced at trial. See Wrinkles v. State, 749 N.E.2d 1179, 1197 (Ind. 2001) (finding no improper conduct where prosecutor referred to the defendant as a "psychopath" and "sociopathic" because the comments were fair characterizations of the evidence). Cooper admitted shooting Selena. And the

---

[2] Apparently the statements were tendered to the State as a part of discovery. See Tr. at 1191-92. No issue in this regard has been raised on appeal.

pathologist testified she was shot from behind either while lying on the ground or pushed up against a wall. Tr. at 536, 541-42. Even the fatal bullet penetrated her chest on the inside of her armpit from behind. See Tr. at 531-32, 541. Further, although Cooper downplayed his culpability for his plea of guilty to domestic battery by testifying "I put my hands on her," Tr. at 870, two witnesses testified without objection about the circumstances of that offense which showed that Cooper dragged Selena by the hair and kicked her in the mouth. See Tr. at 59-60, 135-36.

In any event, the prosecutor's remarks, "From what we know today, we would have predicted that, his behavior was predictable. Look at how he behaved." at least approached if not crossed the line of improper commentary. Considering the statements the prosecutor made just prior—"You can tell the kind of person Curtis Cooper is . . . a back shooter and a woman beater"—they suggest that Cooper more likely than not committed murder in this case based on his past behavior. This Court has held that "[i]t is misconduct for a prosecutor to request the jury to convict a defendant for any reason other than his guilt." Coleman, 750 N.E.2d at 375 (Prosecutor's final summation included the remark that "[t]his is the kind of person we're talking about," which in context implied that the defendant was "violent and a batterer and thus was more likely to have committed murder because he was a bad person."); Wisehart v. State, 693 N.E.2d 23, 59 n.52 (Ind. 1998) (During final summation the prosecutor read a letter the defendant had written to a cohort which said in part "you know, we've committed about every crime there is except rape and murder." The prosecutor then urged the jury, "the State ha[s] done its job in this case. He's committed murder now. Don't let him commit rape.").

Even assuming misconduct in this case, Cooper has not demonstrated that the harm or potential harm done by the prosecutor's comments was substantial. Claiming he did so in self-defense, Cooper admitted murdering Selena. But, "firing multiple shots [at a victim] undercuts a claim of self-defense." Randolph v. State, 755 N.E.2d 572, 576 (Ind. 2001). And importantly, "[a] claim of self-defense cannot be supported . . . when the evidence clearly indicates that the defendant knowingly and intentionally shot his victim in the back and the victim did nothing to provoke the attack." Lampkins v. State, 778 N.E.2d 1248, 1253 (Ind. 2002). It strains credulity to believe that the jury found Cooper guilty of murder for any reason other than the evidence

7

introduced at trial. Any harm done by the prosecutor's remark was *de minimus*, not substantial. And the resulting error if any did not result in denying Cooper fundamental due process.

## II. Penalty Phase of Trial

During the penalty phase of trial the prosecutor made several remarks that Cooper contends focused not on the charged aggravator and how that aggravator outweighed any mitigating factors, but rather (1) focused on uncharged aggravating factors and (2) encouraged the jury to return a sentence of life without parole on Cooper's character: that he was an "unworthy breadwinner, an unworthy son, unworthy father, and, especially, an unworthy boy friend." Appellant's Br. at 18.

A sentence of life without parole is subject to the same statutory standards and requirements as the death penalty. Dumas, 803 N.E.2d at 1120; Ajabu v. State, 693 N.E.2d 921, 936 (Ind. 1998). Under the death penalty statute, following the completion of the guilt-determination phase of the trial and the rendering of the jury's verdict, the trial court reconvenes the jury for the penalty phase. Brown, 783 N.E.2d at 1127. As with a death sentence, "the jury may recommend . . . life imprisonment without parole" only if it finds: "(1) the state has proved beyond a reasonable doubt that at least one (1) of the aggravating circumstances listed in subsection (b) exists; and (2) any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances." Ind. Code § 35-50-2-9(e), (l). Once the jury deliberates and has made its recommendation, the jury is dismissed and the trial court enters an appropriate order at a later sentencing hearing.[3]

In this case the State sought life without parole based on the (b)(9)(c) aggravator: that Cooper intentionally killed Selena while "the defendant was on probation after receiving a sentence for the commission of a felony." I.C. § 35-50-2-9(b)(9)(c). The underlying felony that

---

[3] Indiana's Death Penalty Statute provides that for defendants "sentenced after June 30, 2002," "[i]f the jury reaches a sentencing recommendation, the court shall sentence the defendant accordingly." Pub. L. No. 117-2002, § 2 (2002) (codified at I.C. § 35-50-2-9(e)). This replaced the following language: "The court shall make the final determination of the sentence, after considering the jury's recommendation, and the sentence shall be based on the same standards that the jury was required to consider. The court is not bound by the jury's recommendation." Id.

qualified Cooper for a life sentence was resisting law enforcement as a Class D felony. The statute provides in relevant part, "[a] person who knowingly or intentionally . . . flees from a law enforcement officer after the officer has, by visible or audible means . . . identified himself or herself and ordered the person to stop; commits resisting law enforcement, a Class A misdemeanor . . . ." I.C. § 35-44-3-3. The offense is elevated to a Class D felony if it is committed with the use of a vehicle. As set forth in the Facts section of this opinion, several months before the killing in this case, Cooper led police on a high-speed chase after a physical altercation with Selena.

The State incorporated into the penalty phase of trial "all of the evidence, testimony, [and] cross examination" introduced during the guilt phase. Tr. at 1083. After then introducing documentary evidence concerning Cooper's conviction, sentence, and probation for resisting law enforcement, and testimony identifying Cooper as the person named in the documents, the State rested. The defense called Cooper's father to the stand. His testimony revealed that the then thirty-five-year-old Cooper was raised in a middle-class family and followed in his father's footsteps by operating a successful tax preparation business. The elder Cooper also testified that a sentence of life without parole would create a hardship on his own family as well as Cooper's three minor children. The defense then rested.

The State's opening phase of closing remarks was rather straightforward. The deputy prosecutor essentially recounted the evidence introduced during the guilt phase of trial, argued that the State had proven beyond a reasonable doubt that Cooper intentionally killed Selena and that he did so while on probation for a felony. Id. at 1119-26. During his closing remarks defense counsel argued that Cooper had no significant history of criminal conduct, was acting under extreme stress, and that a life sentence would pose a hardship on Cooper's children. Id. at 1126-32.

Among other things, during the rebuttal phase of its closing remarks, the State encouraged the jury on several occasions to consider Cooper's character in reaching its decision:

> [W]hen you are making this decision, you may consider all the
> evidence introduced during the first phase of the trial together with

9

all the evidence introduced during this phase of the trial in determining your recommendation. You have got to look back over the last four days when you are judging that man's character. You have got to look at what he did as a human being when these events occurred.

. . .

[T]here are three things about the Defendant that you can consider. His age . . . . You can consider his character . . . his mental state, his life, his background and/or any aspect of the offense itself and the Defendant's involvement in it which any one of you believes weighs against or for a sentence of life imprisonment without parole. Now, when you talk about the character of this man seated over here, I want you to think about his actions.

. . .

This was a man who worked a few months out of the year and the rest of the time he sponged off of women that he was dating, three different women. This is the kind of man that borrowed money from women, borrowed money from his parents, that was seeing three women at the same time, making them all believe that they were the only one, living back and forth between two of them.

. . .

[Y]ou have to consider the Defendant's character and when you do that you should be able to come to no other conclusion than the aggravating circumstance in this case, that he was on probation for a felony when he committed this crime outweighs any mitigation that you could ever find if you even find there are any mitigating circumstances in this case.

Tr. at 1132-34, 1135, 1137.

We make several observations. First the State's assertion that "there are three things about the Defendant that you can consider. His age . . . . You can consider his character . . . his mental state, his life, his background and/or any aspect of the offense itself and the Defendant's involvement in it which any one of you believes weighs against or for a sentence of life imprisonment without parole" is an incorrect statement of the law. It is true that the enumerated

10

aggravating factors set forth in the *general* felony sentencing statute "do not limit the matters that the [trial] court may consider in determining the sentence." I.C. § 35-38-1-7.1(d) (2004). Nor do the criteria for sentencing in the general statute, including "the nature and circumstances of the crime committed" or "the person's . . . character and condition," I.C. § 35-38-1-7.1(a)(2), (3) (2004), limit the matters a court may consider in determining a non-capital sentence. Indeed the statutory criteria for sentencing in non-capital cases are not exclusive. Johnson v. State, 734 N.E.2d 242, 246 (Ind. 2000). But we have held "when the death sentence is sought, courts must . . . limit the aggravating circumstances eligible for consideration to those specified in the death penalty statute." Pope v. State, 737 N.E.2d 374, 383 (Ind. 2000) (quoting Bivins v. State, 642 N.E.2d 928, 955 (Ind. 1994)). The same is true for a sentence of life without parole. Pope, 737 N.E.2d at 383. And these limitations apply equally to a jury in the penalty phase of trial. In this case, the charged aggravator is that Cooper was "on probation after receiving a sentence for the commission of a felony." Neither the circumstances of the crime ("any aspect of the offense itself"), the defendant's condition ("his mental state, his life, his background"), nor his character is a proper consideration in determining whether a death sentence or life without parole should be imposed.

Second, and in a related vein, it is simply not the case that in deciding whether to return a verdict of life imprisonment, a jury may consider, "*any aspect of the offense itself and the Defendant's involvement* in it which any one of you believes *weighs against or for a sentence of life imprisonment without parole.*" (Emphases added). Rather, the jury's weighing responsibility is strictly proscribed. Specifically, the jury is limited to determining whether the State's alleged aggravating factor or factors is outweighed by the defendant's proffered mitigating factors.[4] Here, in closing argument counsel for Cooper essentially argued that the

---

[4] Indiana Code section 35-50-2-9(c) provides:

The mitigating circumstances that may be considered under this section are as follows:

(1) The defendant has no significant history of prior criminal conduct.

(2) The defendant was under the influence of extreme mental or emotional disturbance when the murder was committed.

(3) The victim was a participant in or consented to the defendant's conduct.

11

evidence supported three mitigating factors: (1) that Cooper had no significant history of criminal conduct, see I.C. § 35-50-2-9(c)(1); (2) Cooper was acting under extreme mental and emotional stress at the time of the murder, see § I.C. 35-50-2-9(c)(2); and (3) a life sentence would pose a hardship on Cooper's children, see I.C. § 35-50-2-9(c)(8). The jury's obligation was to determine whether the State's alleged aggravator—that Cooper was on probation for a felony—outweighed Cooper's proffered mitigating circumstances. "[A]ny aspect of the [murder] offense itself and the Defendant's involvement in it" was simply not relevant to the jury's consideration. This too was an incorrect statement of the law.

Taken in isolation the deputy prosecutor's misstatement of the law would likely be of little consequence. And that is especially so where, as here, the trial court properly instructed the jury. See, e.g., Turner v. State, 650 N.E.2d 705, 711 (Ind. Ct. App. 1995) (Although the prosecutor engaged in misconduct by misstating the law, the comments were cured by the trial court's jury instructions.). But the comments here were not solely misstatements of law. The unmistakable theme woven through the deputy prosecutor's rebuttal remarks was that Cooper deserved life without parole because he was an unsavory character. Just as "[i]t is misconduct for a prosecutor to request the jury to convict a defendant for any reason other than his guilt," Coleman, 750 N.E.2d at 375, it is also misconduct for a prosecutor to request a jury to return a death penalty or life without parole recommendation for anything other than that the mitigating factors are outweighed by the aggravating factor or factors. See I.C. § 35-50-2-9. And as can be seen in Part I, the deputy prosecutors' underlying theme began the day before in the State's closing remarks during the guilt phase of trial. But in neither phase did Cooper object to the deputy prosecutors' statements. So, the question remains whether the remarks were so

(4) The defendant was an accomplice in a murder committed by another person, and the defendant's participation was relatively minor.

(5) The defendant acted under the substantial domination of another person.

(6) The defendant's capacity to appreciate the criminality of the defendant's conduct or to conform that conduct to the requirements of law was substantially impaired as a result of mental disease or defect or of intoxication.

(7) The defendant was less than eighteen (18) years of age at the time the murder was committed.

(8) Any other circumstances appropriate for consideration.

prejudicial to Cooper's rights as to make a fair trial impossible. That is, was the resulting harm or potential for harm substantial? See Benson, 762 N.E.2d at 756.

Unlike the guilt phase of trial where Cooper presented a highly untenable claim—self-defense in light of evidence that Selena was shot from behind—here the claim is much more plausible. Without the drumbeat repetition assailing Cooper's character, the jury may very well have concluded that violating probation for resisting law enforcement is not so serious an aggravator as to outweigh the claim that Cooper had no prior history of criminal conduct and that a life sentence would pose a hardship on his three minor children. We are persuaded that the cumulative effect of the prosecutor's remarks hampered the jury's ability to decide dispassionately whether Cooper should receive a term of years rather than life without parole. He was thus denied a fair trial. We therefore vacate Cooper's sentence and remand this cause for a new sentencing hearing.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.