**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ELIZABETH A. BELLIN**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANN L. GOOWIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CARL D. JACKSON, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1111-CR-500 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George W. Biddlecome, Judge
Cause No. 20D03-0803-FD-96

**June 13, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Carl Jackson, Jr., appeals his conviction for Class D felony battery. We affirm.

## Issues

Jackson raises three issues, which we restate as:

I.    whether fundamental error occurred when two child witnesses made in-court identifications of Jackson;

II.   whether fundamental error occurred as a result of the prosecution's closing argument; and

III.  whether the evidence is sufficient to sustain Jackson's conviction.

## Facts

Jackson and his wife, Elika, lived in Goshen and had several children, including four-year-old A.J., six-year-old C.A., and seven-year-old C.Y. Elika also had a daughter, fifteen-year-old V.D., from a prior relationship. On January 14, 2007, Jackson told the children that they were not allowed to have cookies or sweets at church. However, A.J. had animal crackers at church, Jackson took the crackers away, and A.J. threw a temper tantrum.

On January 16, 2007, Officer Darrell Robinson with the Goshen Police Department was dispatched to the West Goshen Elementary School to meet Jamie Pippen, an employee of the Department of Child Services ("DCS"). Officer Robinson and Pippen met with A.J., who had extensive bruising and lacerations on his back and arms. Officer Robinson saw that the bruising and lacerations were consistent with injuries from a belt. Officer Robinson was unable to determine how many times A.J. had

2

been hit because of the numerous, overlapping marks and bruises. A.J. also appeared to have fingertip bruises on his right arm from being held in place. A.J. and C.A. were taken into protective custody at that time.

Officer Matt Yoder was dispatched to assist a DCS worker with interviewing Jackson. Officer Yoder listened to the conversation between the DCS worker and Jackson. Jackson, Elika, and the other children, including V.D., told the DCS worker that A.J. got into a fight with his brother, C.Y., and that C.Y. hit A.J. with a belt.

In March 2008, the State charged Jackson with Class D felony battery. At trial, V.D. testified that, after A.J.'s tantrum at church, Jackson told A.J. "that he was going to get him when [he] got home." Tr. p. 214. The next day was a holiday, and V.D. heard Jackson tell A.J. "to take his clothes off because he was going to get him for old to new." Id. at 217. Jackson then started hitting A.J. with his belt, and A.J. was yelling in pain. V.D. saw Jackson hit A.J. ten to twelve times. The next day, Jackson told A.J. to wear a long-sleeved shirt to school. When she got home from school, Jackson told V.D. and the other children that the police and DCS were on their way and that they should say C.Y. hit A.J. with a belt. V.D. testified that, a year after A.J. was injured, Elika kicked Jackson out of the house. V.D. then told the police that Jackson had hit A.J. with a belt. V.D. hoped that, if she told the truth, the other children would be allowed to come home. However, Jackson and Elika reconciled, and V.D. went to live with her grandmother. V.D. also testified that her siblings had new last names.

C.Y. also testified at the trial. C.Y. said that Jackson was his biological father, and he needed assistance identifying Jackson. Jackson did not object to this identification.

3

C.Y. denied hitting A.J. with a belt and testified that Jackson would use a belt to strike A.J. C.Y. did not remember talking to the police or DCS worker. C.A. also testified at the trial and needed assistance identifying Jackson. Jackson did not object to this identification. C.A. testified that Jackson told her, "Don't say anything when the policeman comes in." Id. at 252. C.A. did not testify regarding A.J.'s injuries.

Jackson testified in his defense that C.Y. injured A.J. during a fight. Jackson denied hitting or using a belt on A.J. Jackson testified that he had been "almost five years without [his] children." Id. at 259. Jackson denied telling Officer Yoder that C.Y. hit A.J. with a belt.

During closing arguments, the deputy prosecutor stated:

> At that point in time, let's stop and think about what 15 year old [V.D.] is thinking. She is thinking that her mother is finally getting away from this man. She is thinking what she told you from the very beginning. She had always believed in her heart that no one believed her story, no one believed that little A.J. [sic] beat on little [C.Y.]. She told you no one she knew believed it. And obviously [DCS] did not believe it because they took the kids away. So was she bringing the children back into a home where Carl, Junior, was living? No, he was gone.

Id. at 294-95. Jackson did not object to the deputy prosecutor's comments. The jury found Jackson guilty of Class D felony battery. Jackson now appeals.

**Analysis**

*I. Identification of Jackson*

The first issue is whether fundamental error occurred when C.Y. and C.A. identified Jackson during their testimony. Jackson argues that the actions of the deputy

4

prosecutor in assisting C.Y. and C.A. to identify Jackson were unduly suggestive. During the questioning of C.Y. and C.A., the children struggled with identifying Jackson. The following colloquy occurred between C.Y. and the deputy prosecutor:

> Q. And the person that you know as Carl Jackson, do you see him in the courtroom here today?
>
> A. Yes.
>
> Q. Could you point him out and describe an article of his clothing?
>
> A. Different, I guess.
>
> Q. Well, let me help. Is this Carl Jackson?
>
> A. No.
>
> Q. Is this Carl Jackson?
>
> A. Yes.
>
> Ms. Snyder: May the record reflect, your Honor, that I am standing behind the defendant Carl Jackson, who [C.Y.] has indicated is Carl Jackson, his biological father?
>
> The Court: The record will so reflect.

Tr. pp. 245-46. During C.A.'s testimony, the following discussion occurred:

> Q. That person you know as Carl Jackson, Jr., I see you keep shooting your eyes over to your right. Do you recognize him in the courtroom?
>
> * * * * *
>
> A. Oh, yeah.
>
> Q. That's okay. Is this Carl Jackson, Jr., your dad?
>
> A. No.

5

Q.      Is this Carl Jackson, Jr., your dad?

A.      Yeah.

Ms. Snyder: May the record reflect, your Honor, that the witness has identified the defendant as Carl Jackson, Jr.?

The Court:    The record will so reflect.

Id. at 251-52. Jackson did not object to either identification.

"There is a degree of suggestiveness which is inherent in all in-court identifications; the practical necessity of having the appellant sit at the defendant's table with defense counsel naturally sets him apart from everyone else in the courtroom." Jeter v. State, 888 N.E.2d 1257, 1266 (Ind. 2008), cert. denied. "Whether a particular identification procedure rises to a level of suggestiveness that constitutes reversible error must be determined from the context of the case." Id. "Suggestiveness is proscribed only when it can reasonably be avoided under the circumstances." Id. "[A]bsent any extraordinary effort to single out the defendant at trial, in-court identification is not unduly suggestive where the witness is firm in his identification." Id. Because of a criminal defendant's right to be present and confront his or her accusers, some amount of suggestiveness cannot be avoided. Id.

Jackson, however, did not object to the allegedly suggestive identification. "Failure to object at trial waives the issue for review unless fundamental error occurred." Hoglund v. State, 962 N.E.2d 1230, 1239 (Ind. 2012). "The fundamental error doctrine provides a vehicle for the review of error not properly preserved for appeal." Id. "In order to be fundamental, the error must represent a blatant violation of basic principles

6

rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process." Id. Harm is found when error is so prejudicial as to make a fair trial impossible. Id.

Jackson argues that the identifications resulted in fundamental error, but we disagree. Jackson must show that the allegedly suggestive identification made a fair trial impossible. However, C.Y. and C.A. merely identified Jackson as their father, and his status as their father was not at issue in the case. Rather, the issue here was whether Jackson or C.Y. injured A.J. Moreover, V.D. also identified Jackson during her testimony. Under these circumstances, Jackson cannot show that the identifications resulted in fundamental error.

## II. Prosecutor's Closing Statement

The next issue is whether fundamental error occurred as a result of the deputy prosecutor's closing argument. Jackson argues that the deputy prosecutor's comments during closing argument constituted misconduct that resulted in fundamental error. During his closing argument, Jackson questioned V.D.'s credibility. The deputy prosecutor responded in part with the following statement:

> At that point in time, let's stop and think about what 15 year old [V.D.] is thinking. She is thinking that her mother is finally getting away from this man. She is thinking what she told you from the very beginning. She had always believed in her heart that no one believed her story, no one believed that little A.J. [sic] beat on little [C.Y.]. She told you no one she knew believed it. And obviously [DCS] did not believe it because they took the kids away. So was she bringing the children back into a home where Carl, Junior, was living? No, he was gone.

7

Tr. pp. 294-95. According to Jackson, these comments indicate that DCS believed Jackson was lying about A.J.'s injuries and took the children out of the home as a result.

"In reviewing a properly preserved claim of prosecutorial misconduct, we determine: (1) whether the prosecutor engaged in misconduct, and if so; (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected." Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006). The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. Id. When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. Id. If the party is not satisfied with the admonishment, then he or she should move for mistrial. Id. Failure to request an admonishment or to move for mistrial results in waiver. Id.

Here, Jackson did not object, request an admonishment, or move for a mistrial. Where a claim of prosecutorial misconduct has not been properly preserved, our standard for review is different from that of a properly preserved claim. Id. The defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. Id. Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. Id. It is error that makes a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm. Id.

Even if we assume that the deputy prosecutor's comments were improper, the comments did not rise to the level of fundamental error. Although the State did not

8

present evidence from DCS regarding the reasons for the removal of the children, Officer Robinson testified that, upon seeing A.J.'s bruising, A.J. and C.A. were placed in protective custody. V.D. testified that she hoped that, if she told the truth, the other children would be allowed to come home. During his testimony, Jackson admitted that he had been "almost five years without [his] children." Tr. p. 259. It was clear from the evidence presented at trial that the children had been removed by DCS. Further, given V.D.'s testimony and the photographs of A.J.'s injuries, it is unlikely that Jackson was denied a fair trial as a result of the deputy prosecutor's brief comment about DCS's beliefs.

### III. Sufficiency of the Evidence

Jackson next argues that the evidence is insufficient to sustain his conviction for Class D felony battery. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

"A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery . . . ." Ind. Code § 35-42-2-1(a). The offense is a Class D felony if it results in bodily injury to "a person less than fourteen (14) years of age and is committed by a person at least eighteen (18) years of age." I.C. § 35-42-2-

9

1(a)(2). Thus, the State was required to demonstrate that Jackson knowingly or intentionally touched A.J. in a rude, insolent, or angry manner, that bodily injury to A.J. resulted, that A.J. was less than fourteen years old, and that Jackson was at least eighteen years old.

Jackson argues that the evidence is insufficient because only V.D. testified that Jackson inflicted the injuries on A.J. and V.D. had originally told the DCS worker that C.Y. had hit A.J. with a belt. Jackson argues that A.J., Elika, and the other children should have testified about A.J.'s injuries too. V.D.'s credibility and the fact that A.J. and Elika did not testify were circumstances for the jury to weigh. Through V.D.'s testimony, the State presented evidence that Jackson repeatedly struck four-year-old A.J. on the back with a belt, resulting in bruising and lacerations. This evidence is sufficient to sustain Jackson's conviction.

**Conclusion**

No fundamental error occurred as a result of C.Y. and C.A.'s identification of Jackson or the deputy prosecutor's comments during closing arguments. Further, the evidence is sufficient to sustain Jackson's conviction. We affirm.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.

10