**Henry L. SHELL, Jr., Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 52A02–1307–CR–598.

Supreme Court of Indiana.

Jan. 27, 2015.

**Published Order Denying Petition To Transfer [Corrected]**

This matter is before the Indiana Supreme Court on a petition to transfer jurisdiction filed by the appellant pursuant to Appellate Rule 57, following the Court of Appeals memorandum decision issued on July 14, 2014. The Court has reviewed the decision of the Court of Appeals. Any record on appeal that was submitted has been made available to the Court, along with all briefs filed in the Court of Appeals and all the materials filed in connection with the request to transfer jurisdiction. Each member of the Court has had the opportunity to voice that Justice's views on the case in conference with the other Justices, and each has voted on the petition to transfer.

Being duly advised, the Court DENIES the appellant's petition to transfer jurisdiction. This appeal is at an end.

RUSH, C.J., and DICKSON and MASSA, JJ., concur.

DAVID, J., dissents to the denial of transfer with separate opinion, in which RUCKER, J., joins.

DAVID, Justice.

I respectfully dissent from the denial of transfer. To emphasize the significant obligation that attorneys have to follow the rules and assure that justice is properly administered, I believe we should address the issue of whether the alleged prosecutorial misconduct was harmless beyond a reasonable doubt.

In this case, the prosecuting attorney did the following: (1) openly stated to the jury that defense counsel's "check comes from the government too, so we all work for the government here"; (2) commented three times in front of the jury and over objection on Shell's post-arrest right to remain silent; and (3) referred to his own opinion as to Shell's guilt during closing arguments. (Tr. at 284, 657, 662, 691.)

Article 1, Section 14 of the Indiana Constitution provides, in relevant part, that "[n]o person, in any criminal prosecution, shall be compelled to testify against himself." This Court has also recognized that the Fifth Amendment "privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." *Moore v. State,* 669 N.E.2d 733, 739 (Ind. 1996). Additionally, "under the Fourteenth Amendment a prosecutor may not use the silence of a defendant who [has] been arrested and Mirandized to impeach the defendant." *Trice v. State,* 766 N.E.2d 1180, 1182 (Ind.2002) (citing *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)).

Aside from the right to remain silent, other limitations are placed on how the prosecution is to present a case in order to protect the rights of the defendant. In regards to closing arguments, "the prosecution is restricted by law to the evidence presented at trial and must not be based upon implied personal knowledge." *Marsh v. State,* 272 Ind. 178, 396 N.E.2d 883, 886 (1979) (citing *Clark v. State,* 264

Ind. 524, 535, 348 N.E.2d 27, 34 (1976)). Additionally, in *Jackson v. State*, the Court of Appeals recognized that the prosecutor's statement that "[p]ublic defenders are paid by the state" was improper, even though it did not ultimately result in reversible error. 698 N.E.2d 809, 812 (Ind. Ct.App.1998).

Thus, the prosecution seemingly acted in contravention of recognized standards at several points throughout the trial. The cumulative impact of the apparently improper comments is especially concerning where there were three different references to Shell exercising his right to remain silent. One sustained objection should have been sufficient to deter the prosecution from making any future comments that were similarly inappropriate.[1]

Furthermore, because Shell and his wife were the only witnesses present when the incident occurred, his testimony was especially significant to which side the jury believed. References by the prosecution that this was the first time they had ever heard Shell's story could easily suggest to the jury that Shell's trial testimony is at best inconsistent and at worst completely fabricated. Moreover, although not noted by Shell, in closing arguments the prosecution emphasized that Shell's wife's story, which was very different from Shell's, had stayed the same from the beginning.

Prosecutors must ensure that a criminal defendant's rights are upheld by exercising only the soundest judgment and caution. Whether improper prosecutorial statements are due to carelessness or a conscious effort to test the line of what constitutes misconduct, the potential for a cumulative prejudicial impact on a defendant cannot be ignored. Even cases where fundamental error is not established do not detract from the "condemnable" nature of prosecutorial conduct in some instances. *See Bernard v. State*, 540 N.E.2d 23, 25 (Ind.1989) (stating that "comments actually made by the prosecutor at the trial below were subject to interpretation as comments on the failure to testify and were therefore condemnable").

A reviewing court must determine whether prosecutorial misconduct "placed the defendant in a position of grave peril to which he or she would not have been subjected." *Cooper v. State*, 854 N.E.2d 831, 835 (Ind.2006) (citing *Booher v. State*, 773 N.E.2d 814, 817 (Ind.2002)). However, this is not to suggest that anything that falls just below this standard is necessarily considered appropriate. Rather, the highest degree of professionalism should continue to govern the behavior of all attorneys at all times. Walking the line of permissible and impermissible conduct creates distrust in our legal system, undermines the rights we have sworn to protect, and discourages collegiality. The profession deserves thoughtful adherence to ethical, professional, and prosecutorial standards.

Because this Court is passing up an opportunity to resolve what seems to me to be a disturbing trend, I respectfully dissent from the denial of transfer.

RUCKER, J., joins.

---

1. In fact, immediately after the trial court sustained defense counsel's objection to the prosecution's question, "You were offered an opportunity to tell law enforcement your side of the story ...", the prosecution's very next question was, "Mr. Shell, have we ever heard this story before?" Shell answered, "No." The prosecution then followed up with "Not until today?" Defense counsel made the same objection, which was once again sustained. (Tr. at 657). Then, the prosecution repeated the first part of his question with Shell's answer in order to clarify what the objection was to. *Id.*