## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 09 2015, 9:25 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Amanda Choban, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 9, 2015 <br><br> Court of Appeals Case No. 49A02-1406-CR-400 <br><br> Appeal from the Marion Superior Court <br><br> Cause No. 49F15-1208-FD-51160 <br><br> The Honorable James B. Osborn, Judge |

**Brown, Judge.**

[1] Amanda Choban ("Choban") appeals her conviction for theft as a class D felony. Choban raises one issue which we revise and restate as whether the charging information and lack of a jury instruction requiring unanimity resulted in fundamental error. We affirm.

### Facts and Procedural History

[2] In the beginning of 2012, Choban's aunt, Christina Choban ("Christina"),[1] resided on Shelbyville Road in Marion County and offered to let Choban come and stay with her because Choban did not have a place to live. Choban, her four children, her boyfriend Daniel Matthews, and her three dogs moved into Christina's residence, which was a house she rented from Chris Harrison. At the time that Choban moved in to Christina's house, Harrison was using the detached garage as an office space. Christina traveled for work and was home on the weekends. When she returned home or was not traveling, there were problems. In early June, the house "was kind of tore up," "there were no dishes that were clean," there was food in the microwave that had been sitting there for awhile, Choban's children were breaking things, and Choban and Matthews were not keeping up the house. Transcript at 44.

[3] After a fight ensued, Christina told Choban that she needed to "get out of [her] house." *Id.* at 45. Christina spoke with Harrison about the problems, and Harrison suggested the detached garage, which was about ten feet from

---

[1] Christina is referred to as Christie and Christi in the record.

Christina's residence, as a place for Choban. Choban made an arrangement with Harrison, and Choban and Matthews moved into the garage, but they still had access to Christina's house because there was no running water in the garage. Christina thought that with more space, "it might have gotten better," but "it got worse." *Id.* at 46. Christina's things "were still getting broken," and her things were being taken without her permission. *Id.* Choban found her silverware in the trash can and found her pizza pan outside, and observed that her good cookware was used to feed the dogs and then left outside.

[4] Choban and Matthews lived in the garage less than a month before moving out on July 1. On the night of their move, "they confirmed they were going to be out of the house, and that they were going to take [Christina's] things and wash them, and bring them back," and Christina said: "No, just leave them all on the couch, and I'd take care of cleaning them." *Id.* at 49-50. On the morning after the move, Christina found that her trash can was full of her own belongings. She found her pizza pan, a microwave plate, cups, towels, forks, DVDs, a hair clip, a glass, a candle jar, a plate, toothpaste, a coffee mug, and cups in the trash can. She noticed that fifty to one hundred pieces of clothing were missing and discovered "a lot of it" in the trash can. *Id.* at 48. She also discovered that one of her bed sheets had been hammered to a wall to make a door cover in the garage. Choban and Matthews never brought items back to Christina.

[5] At some point, Choban asked her grandmother, Christina's mother, if she could have a garage sale at her house, and her grandmother said yes. Choban and Matthews had access to a shed on the grandmother's property and placed a

padlock on it during the garage sale. A garage sale took place, and Choban's uncle, Doug Choban ("Doug"), observed swords, some drills, and towels. Doug learned that items were missing from Harrison's garage, took a photograph of one of the items that Harrison described as missing, and sent it to him. When the garage sale was over, Doug replaced the padlock with a key lock.

[6] Doug called Christina and asked her to come over to her mother's house. When she arrived, Doug showed her the shed behind the house and a tarp over her blankets and "just a pile of stuff." *Id.* at 62. Christina found several of her items in the pile under the tarp or in the shed including towels, washrags, a voice changer from a Halloween costume, a blanket, and DVDs. Christina also observed a "walkie talkie system," a tool, and a sword that belonged to Harrison in the shed or under the tarp. *Id.* at 67. Indianapolis Police Detective Kurt Rincker arrived at the scene, and Christina identified her items as being stolen. Detective Rincker spoke with Harrison and took control of one or two swords and walkie talkies that belonged to Harrison. The next day, Harrison identified the items that belonged to him.

[7] On August 7, 2012, the State charged Choban and Matthews with theft as a class D felony. Specifically, the State alleged that Choban "on or about July 1, 2012, did knowingly exert unauthorized control over the property, that is: sword(s) and/or radio(s) and/or a computer and/or household item(s), of Christi[na] Choban and/or Chris Harrison, with intent to deprive Christi[na] Choban and/or Chris Harrison of any part of the value or use of said property .

. . ." Appellant's Appendix at 24. On August 15, 2012, the State filed an amended information to add a date range of April 8, 2012 to July 3, 2012, and to add Doug as a victim. On March 22, 2013, Choban filed a motion to sever her trial from the trial of Matthews. On March 27, 2013, the court granted Choban's motion to sever.

A few months later, Christina saw Choban, and Choban called her a f------ b----. On January 2, 2013, Choban gave three swords that had been hanging in the garage when Christina moved into Harrison's rental property to the police, the police gave the swords to Christina, and Christina gave them to Harrison.

On March 19, 2014, the court held a jury trial. Before the trial, the prosecutor stated: "I was not aware that [another prosecutor] had added um, Mr. Choban as a main victim. Um, the things weren't his, so I guess the State would request that we remove his name from the charging information." Transcript at 4. Choban's counsel did not object, and the court allowed the State to amend the charging information to delete Doug's name from the information.

At trial, Christina, Doug, and Detective Rincker testified to the foregoing. Choban testified that she did not take anything belonging to Christina or Harrison, that she was under the impression that the swords belonged to Matthews, and that she did not put anything in the trash can. When asked by the prosecutor whether some of the items that Christina let her use were the items that ended up in the trash, Choban testified: "Most of the items that I saw

today belonged to me." *Id.* at 144. She also testified that she was "quite upset about that." *Id.*

[11] Preliminary Instruction No. 4 states:

> In this case, the State of Indiana has charged the Defendant with Theft, a Class D Felony. The charge reads as follows:
>
> Count I
>
> On or about or between April 8, 2012 and July 3, 2012, in Marion County, State of Indiana, the following named defendant, Amanda Choban, did knowingly exert unauthorized control over the property, to wit: sword(s) and/or radio(s) and/or a computer(s) and/or household item(s), of another person, to wit: Christi[na] Choban and/or Chris Harrison, with the intent to deprive the person of any part of its value or use.

Appellant's Appendix at 45. Preliminary Instruction No. 6 states in part:

> Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:
>
> The Defendant
>
> knowingly
>
> exerted unauthorized control
>
> over the property of Christi[na] Choban and/or Chris Harrison
>
> with intent to deprive Christi[na] Choban and/or Chris Harrison of any part of its value or use.
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of theft, a Class D felony, as charged in Count I.

*Id.* at 47.

[12]    The jury found Choban guilty as charged. At the sentencing, Choban made a statement, and the court stated: "[N]othing that I heard you say I find believable. I – you don't come across as credible. The jurors didn't find you credible when you testified." *Id.* at 195. The court sentenced Choban to 365 days with 180 days served on Community Corrections Home Detention with GPS monitoring and 185 days suspended to probation.

## *Discussion*

[13]    The issue is whether the charging information and lack of a jury instruction requiring unanimity resulted in fundamental error. Choban argues that the charging information as amended alleged at least two crimes in a single count, and that Preliminary Jury Instruction #4 alleged two separate thefts of numerous unrelated items from two unrelated people over a period of months. She asserts that she did not object to the duplicity in the charging information, but the cumulative impact of this and other errors was fundamental error, including that the jury was not instructed that it must unanimously agree on a theft before convicting her. Choban argues that one juror could have believed that she threw away some of her aunt's dishes out of spite, but knew nothing about the swords and another juror could have believed that the household items removed from the garage belonged to Choban but that she helped Matthews steal the swords. She claims that the cumulative impact of these errors made a fair trial impossible.

[14]    The State maintains that Choban has not demonstrated fundamental error, and that her counsel may very well have made a strategic decision to waive the issue

at trial because, if her counsel had objected to the charging information and the State had chosen to separate the offense into separate counts, then Choban's sentence may have been longer or more severe. The State also argues that her claims of error fail both individually and cumulatively. It contends that the facts do not constitute separate offenses requiring more than one charged count of theft and that "[b]ecause the State only charged and convicted Choban on one offense, the theft of items from Christina's residence during the period Choban resided there, this instruction is not required." Appellee's Brief at 9. The State also points to other jury instructions that were given including that the State must prove each element beyond a reasonable doubt, and that "[t]o return a verdict, each of you must agree to it." Appellant's Appendix at 68. The State contends that Choban is requesting that we reweigh the evidence and points out that the trial court stated that Choban was not credible and that the jurors did not find her credible.

[15] As Choban acknowledges, she did not object at trial to the charging information, the instructions, or to the lack of a jury instruction on unanimity. To circumvent waiver, Choban contends that the court permitted the trial to proceed on two separate thefts charged in a single count and failed to provide an instruction on unanimity and this resulted in fundamental error. Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process . . . present[ing] an undeniable

and substantial potential for harm." *Id.* "This exception is available only in 'egregious circumstances.'" *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (quoting *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003)), *reh'g denied*. "Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error." *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014), *reh'g denied*.

[16] As pointed out by the State, Choban's attorney may have made a strategic decision to waive the issue of the charging information because separate counts may have resulted in a longer sentence. The State charged Choban with theft occurring between April 8, 2012, and July 3, 2012, and the record reveals that items belonging to Christina and Harrison were stolen during the period alleged. Based upon the allegations in the charging information, the State could have charged Choban with two separate offenses resulting in two separate convictions. Even assuming error, the State presented evidence that Choban had access to the stolen items, that items were in her possession, that she took the items without permission, and that she attempted to sell or otherwise dispose of the items. The only issue was the credibility of the alleged victims and Choban, and the jury resolved the basic credibility dispute against the defendant. Indeed, the trial court noted at the sentencing hearing: "[N]othing that I heard you say I find believable. I – you don't come across as credible. The jurors didn't find you credible when you testified." Transcript at 195.

Additionally, an instruction was given directing the jury that to return a verdict they must all agree to it. We cannot say that Choban has demonstrated that any error so prejudiced her that she was denied a fair trial.

## *Conclusion*

[17] For the foregoing reasons, we affirm Choban's conviction.

[18] Affirmed.

Bailey, J., and Robb, J., concur.