## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 12 2017, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lamar Wooden, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 12, 2017 <br><br> 49A02-1611-CR-2561 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Grant W. Hawkins, Judge <br><br> Trial Court Cause No. 49G05-1510-MR-37109 |

**Bailey, Judge.**

# Case Summary

[1] Lamar Wooden ("Wooden") appeals his conviction for Murder, a felony.[1] He presents the sole issue of whether there was prosecutorial misconduct amounting to fundamental error because in rebuttal closing argument the prosecutor suggested that Wooden had a burden of proof or that the State was required to present exculpatory evidence. We affirm.

# Facts and Procedural History

[2] On October 16, 2015, relatives of Lorirell Wooden ("Lorirell") gathered at Lorirell's Indianapolis residence to celebrate her birthday. Lorirell's sister, Latasha Eldridge ("Latasha") was among the guests. Latasha's husband, Gerald Eldridge ("Gerald") showed up unexpectedly and shortly thereafter, Wooden, who is a cousin to Lorirell and Latasha, showed up. He was accompanied by his friend, Adrian Riggs ("Riggs"). Latasha and Gerald immediately decided to leave the party and Gerald stepped outside.

[3] Wooden hugged his cousin Lakisha Wooden ("Lakisha") and she observed the handle of a gun protruding from the front pocket of Wooden's hoodie. Lakisha warned Wooden not to start trouble, as children were present. Wooden asked for Lorirell and, when she appeared, gave her a hug. Lorirell also observed that

---

[1] Ind. Code § 35-42-1-1.

Wooden "had a gun hanging out." (Tr. Vol. II pg. 119.) Wooden then quickly went outside. Within one minute, the women inside the house heard gunshots.

[4] Gerald's and Latasha's daughter, Lydia Dukes ("Dukes") ran outside at the sound of the gunshots. She observed Wooden shooting at Gerald's van as he drove away. She then saw Riggs toss keys to Wooden and he ran off in the direction where Riggs' girlfriend's vehicle had been parked. Dukes began beating Riggs on his head. Lorirell ran outside to find that Wooden was gone and Riggs was being beaten. Latasha saw her husband's van drive away and she followed in another vehicle.

[5] At a gas station near 30th Street and College Avenue, Ronald Smith ("Smith") stood waiting for a ride. He saw a man driving a gray Camaro with a black top approach a van and fire multiple shots through the passenger side window. He then observed the driver of the van clutch his chest. Smith called 9-1-1 and ran toward the shooting victim. Gerald died at the scene. When Lorirell arrived and identified herself to police officers as the victim's wife, Smith told her the shooter was "a guy in a gray Camaro with a black top" and Lorirell responded that it was her cousin. (Tr. Vol. II pg. 245.) Smith later examined a photographic array and identified Wooden as the shooter.

[6] Wooden was arrested and charged with Murder. On October 3, 2016, his jury trial commenced. During the presentation of evidence, Leroy Sargent ("Sargent"), who is Lorirell's boyfriend, provided somewhat equivocal testimony as to what he observed as he returned home from work on October

16, 2015. His equivocation as to who was in the vehicle he passed, which was not a Camaro, became a focus during the defense closing argument and rebuttal closing argument. However, no contemporaneous objection was lodged by Wooden.

When the trial concluded, the jury found Wooden guilty as charged. He was sentenced to a term of sixty years of imprisonment. He now appeals.

# Discussion and Decision

Wooden alleges that the prosecutor engaged in misconduct during the presentation of rebuttal closing argument. The Indiana Supreme Court has set forth the legal standards under which we review a claim of prosecutorial misconduct:

> In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected" otherwise. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006), *quoted in Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012). A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. *Mahla v. State*, 496 N.E.2d 568, 572 (Ind. 1986). "Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by *the probable persuasive effect* of the misconduct *on the jury's decision*, rather than the degree of impropriety of the conduct." *Cooper*, 854 N.E.2d at 835 (emphasis added) (citations omitted). To preserve a claim of prosecutorial misconduct, the

> defendant must – at the time the alleged misconduct occurs – request an admonishment to the jury, and if further relief is desired, move for a mistrial. *Id.; see also Maldonado v. State*, 265 Ind. 492, 498, 355 N.E.2d 843, 848 (1976).

*Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014).

[9] Wooden did not object, request an admonishment to the jury, or move for a mistrial. Thus, appellate review of a claim of prosecutorial misconduct is waived for failure to preserve the claim of error. *Id.* When a defendant has waived review of a claim of prosecutorial misconduct for appellate review, he "must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error." *Id.* at 667-68. Fundamental error is an extremely narrow exception to the waiver rule, and exists only when the trial court's errors are so prejudicial that a fair trial was made impossible. *Id.* at 667-68.

[10] During closing argument, the State urged the jury to convict Wooden based upon eyewitness testimony from Smith, circumstantial evidence from the party-goers, and physical evidence including ballistics test results. In response, defense counsel argued in closing that the evidence pointed "just as directly to Adrian Riggs as it does to Mr. Wooden." (Tr. Vol. IV. pg 36.) Defense counsel described an excerpt from Sargent's deposition arguably suggesting that Riggs drove a Camaro and Wooden drove another vehicle on the day of the shooting. Counsel claimed:

Again, [the] State still doesn't want you to hear this evidence. …
We have no burden.  They should have done all these things. …
Anyway, the State spent so much time arguing and trying [to]
prevent you from seeing evidence that they knew or should have
known was going to come into evidence.

(Tr. Vol. IV pg. 37, 44.)

[11]     After pointing to alleged evidentiary gaps – potential witness Derek Caruthers, the 9-1-1 call, a photograph of Riggs, DNA test results from Riggs – defense counsel continued:

Again, there is no question that a black male in that Camaro shot
and killed Gerald Eldridge.  The question is who it was.  And I
say again that the evidence points just as directly to Mr. Riggs as
it does to Mr. Wooden.  And the fact that you don't have all the
evidence is their fault.  All the other things that could of and
should have [been] done, all the things you would have wanted
done, if one of your loved ones was on trial, if your son or
daughter or a husband was on trial and you learned that the State
didn't do all these things you'd be outraged.

(Tr. Vol. IV. pgs 51-52.)

[12]     Wooden claims that the prosecutor committed misconduct by arguing, in rebuttal, as follows:

Now the defense wants to say that we're preventing you from
seeing evidence, preventing you from hearing from [sic] to use
the example, the other 9-1-1 caller.  Let me make it clear, the
State has the burden of proof in this case.  It's also true that the
defense has the same subpoena powers as the State has.  And
they can use those just as much as we do.  We're not preventing

you from hearing testimony. Why would I ever have called Leroy Sargent, I wasn't hiding him. Honestly we have to tell you what he told us. And that was that he was changing his story.

(Tr. Vol. IV. pgs. 55-56.)

[13] Wooden challenges two sections of the foregoing argument. First, he contends that referring to defense subpoena powers is an improper comment upon Wooden's decision not to call witnesses and suggests to the jury that Wooden bore a burden of proof. It is improper for a prosecutor to suggest that a defendant shoulders the burden of proof in a criminal case. *Dobbins v. State*, 721 N.E.2d 867, 874 (Ind. 1999). Here, however, the challenged language did not directly or indirectly suggest that Wooden bore a burden of proof. Indeed, the prosecutor informed the jury that the State alone had the burden of proof.

[14] Moreover, "[p]rosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." *Cooper*, 854 N.E.2d at 836. Although the reference to subpoena powers may have highlighted Wooden's lack of witnesses, the prosecutor was responding to Wooden's accusation that the State had engaged in outrageous behavior by failing to present evidence implicating Riggs. In these circumstances, it did not constitute misconduct.

[15] Second, Wooden argues that the prosecutor misled the jury by claiming "we have to tell you what he told us." (Tr. Vol. IV, pg. 56.) Wooden observes that, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), the State has a duty to notify the defense of exculpatory evidence. He further observes, and we agree, that

this duty does not extend to the actual presentation of exculpatory evidence to the jury. *See Craig v. State*, 370 N.E.2d 880, 884 (Ind. 1977) (recognizing that "[the] assertion that the prosecution has a duty to present to the jury evidence favorable to the accused is incorrect and misleading.") Too, we agree with Wooden that the prosecutor's claim of an obligation "to tell you what he told us … changing his story," (Tr. Vol. IV. pg. 56), suggests that the State must present exculpatory evidence to the jury.

[16] The inquiry then is whether the comment amounts to fundamental error. In evaluating the issue of fundamental error, the task of the reviewing court is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury. *Ryan,* 9 N.E.3d at 668. This includes the evidence admitted at trial, closing argument, and jury instructions. *Id.* We then determine whether the misconduct had such *an undeniable and substantial effect on the jury's decision* that a fair trial was impossible. *Id.*

[17] The evidence of Wooden's guilt was overwhelming. Lakisha and Lorirell testified that Wooden had a gun in his pocket at the party. Several witnesses testified that they heard gunshots almost immediately after Wooden followed Gerald outside. Dukes testified that she saw Wooden shooting at her father's van; she then saw Riggs toss keys to Wooden and he drove away. Other witnesses saw that Riggs remained outside Lorirell's house for some time after Wooden began pursuit of Gerald; during this time Riggs was beaten and then appeared to search for something. Smith, a bystander and eyewitness to Gerald's shooting, identified Wooden from a photographic array. He again

identified Wooden in open court.  The Camaro described by witnesses was found near Wooden's residence.  Inside the vehicle was a pistol and a spent bullet; ballistics testing matched that pistol with a bullet recovered from Gerald's body.  We conclude that the prosecutor's isolated reference to the State's obligation under the law did not affect the jury's decision such that a fair trial was impossible.

# Conclusion

[18]    The prosecutor did not make comments in closing rebuttal argument amounting to fundamental error.

[19]    Affirmed.

Vaidik, C.J., and Robb, J., concur.