**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 17 2013, 5:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Frischkorn Law LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY WORL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1302-CR-167 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Daniel J. Pfleging, Judge
Cause No. 29D02-1201-FA-675

**October 17, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Anthony Worl ("Worl") appeals from his convictions of one count of child molesting[1] as a Class A felony, three counts of child molesting,[2] each as a Class C felony, one count of child solicitation,[3] as a Class D felony, and an habitual offender determination. Worl presents the following restated issues for our review:

I.      Whether there is sufficient evidence to support his convictions for child molesting; and

II.     Whether the prosecutor committed prosecutorial misconduct in his closing argument.

We affirm.

## FACTS AND PROCEDURAL HISTORY[4]

The facts most favorable to the jury's verdict reveal that A.W., a girl who was ten years old as of November 2012, was the daughter of C.W. ("Father") and H.E. ("Mother"). Mother and Father were never married but lived together for a short time after A.W. was born. Father then moved to Cicero, Indiana. During the summer of 2011, Mother and A.W. moved into Father's home in Cicero, primarily for financial reasons. During that time, Mother became pregnant with Worl's child. Father and Worl were good friends, having known each other since they were twelve years old. Mother had

---

[1] *See* Ind. Code § 35-42-4-3(a)(1).

[2] *See* Ind. Code § 35-42-4-3(b).

[3] *See* Ind. Code § 35-42-4-6.

[4] We admonish counsel for appellant that the statement of facts should "describe the facts relevant to the issues presented," "be in narrative form," be stated "in accordance with the standard of review," and comply with all of the requirements of Ind. Appellate Rule 46(A)(6). The Statement of Facts tendered here, which is but one paragraph in length, fails to satisfy these criteria.

also known Worl since she was a child. Father, who knew Worl was Mother's boyfriend, agreed to have Worl move into his house in the summer of 2011.

Father and Mother's jobs entailed working regularly from Monday through Friday, but Worl would often have Fridays off if he had worked for forty hours at the end of the day Thursday. When Worl was home on Fridays, Mother and Father left A.W. in his care, rather than hiring a babysitter. Additionally, on the occasions when Father or Mother were not home on the weekend, because of work or some other reasons, A.W. was left alone in Worl's care. Mother was also required to work on holidays, which sometimes meant A.W. was left alone with Worl if Father was not home. During the school year there were other times when A.W. and Worl were left at home alone.

Worl went to jail in November of 2011 and was expected to return to Father's home sometime in February 2012. After Worl left, A.W. began asking, approximately once a week, when Worl would be returning home. One day when A.W. was with Mother, A.W. informed Mother that her vagina was sore. On another occasion in December, sometime near Christmas, A.W. used the word "horny" in context during a conversation with Mother. When Mother asked A.W. where she learned how to use the word, A.W. told Mother to ask Worl. Mother and A.W. spoke about Worl at which time A.W. disclosed more information to Mother about him. Mother and A.W. then informed Father about sexual contact that had occurred between A.W. and Worl. Father contacted law enforcement and drove A.W. to the sheriff's department at midnight because A.W. did not want to wait until the next day before speaking about it.

According to A.W., Worl touched her in her "private places" more than one time. *Tr.* at 241-42. Worl also had A.W. touch him on more than one occasion. The touching would occur when they were in Mother's room on her bed. On at least one occasion while they were together, Worl had A.W. insert a white candle "up his butt" after first dipping the candle in Corn Husker lotion, which was kept in a bottle near Mother's bed. *Id.* at 243-44. Worl also touched A.W. with his hand, specifically his finger, and A.W. testified that he touched her "in the butt" adding that Worl put his finger "pretty much everywhere down there." *Id.* at 245. According to A.W., the touching occurred both "inside" and "outside." *Id.* at 246.

On one occasion, Worl molested A.W. at night while she was asleep. The next morning Worl told A.W. that he had stuck her finger in his "butt" and then had her watch him defecate. *Id.* A.W. testified that Worl had her touch his "private area," which she described as his genitalia, specifically, his "penis and ball." *Id.* In order to induce A.W. to touch his genitalia, he said "touch it, it won't bite," and when A.W. touched him, "something came out." *Id.* at 247.

After Father took A.W. to the sheriff's department where they informed Detective Scott McKinney ("Detective McKinney") of the molestations, Detective McKinney set up an interview for A.W. with Deb Keaton ("Keaton") at the Cherish Center. During the interview, A.W. disclosed to Keaton that sexually inappropriate behavior took place between A.W. and Worl. Prior to that interview, neither Keaton, Father, Mother, nor Detective McKinney were aware of the white candle that Worl had A.W. insert into his

anus. Keaton testified at trial that A.W. took the interview in an unforeseen direction when she disclosed that information.

During the course of the ensuing investigation, Detective McKinney interviewed Worl, who admitted to being alone with A.W. on occasion. Detective McKinney also had A.W. show him the white candle and the Corn Husker lotion. Those items were collected as evidence and were photographed. That evidence was taken to the Indiana State Police Laboratory, where forensic biologist, Meredith Livingston ("Livingston") confirmed that the candlestick contained both (1) amylase; and (2) Worl's DNA. Livingston testified at trial that amaylase is a digestive fluid that is present in the human body from the mouth to the anus, in both saliva and fecal matter, or any place involving digestion.

On January 24, 2012, the State charged Worl with three counts of Class A felony child molesting, three counts of Class C felony child molesting, four counts of Class D felony child solicitation, and alleged Worl was an habitual offender. At the conclusion of Worl's jury trial, the jury found Worl not guilty of one count of Class A felony child molesting, and not guilty of three counts of Class D felony child solicitation. The jury found Worl guilty of one count of Class A felony child molesting, three counts of Class C felony child molesting, and one count of Class D felony child solicitation. Worl admitted to his status as an habitual offender. The trial court sentenced Worl to an aggregate sentence of eighty-six years incarcerated. Worl now appeals.

## DISCUSSION AND DECISION

## I. Sufficiency of the Evidence

Worl challenges the sufficiency of the evidence supporting his convictions for child molesting as a Class A felony and as a Class C felony. Our standard of review of a challenge to the sufficiency of the evidence is well-established: We will not re-weigh the evidence or judge the credibility of the witnesses and will consider only the probative evidence and the reasonable inferences to be drawn therefrom that support the verdict. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). Consequently, we will affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Feyka v. State*, 972 N.E.2d 387, 392 (Ind. Ct. App. 2012). "It is therefore not necessary that the evidence 'overcome every reasonable hypothesis of innocence[]'"; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007) (quoting *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995)).

In order to establish beyond a reasonable doubt that Worl had committed Class A felony child molesting, the State was required to prove that Worl who was at least twenty-one years old, with A.W., who was less than fourteen years old, performed or submitted to deviate sexual conduct. Ind. Code § 35-42-4-3. The pertinent definition of deviate sexual conduct is "an act involving[] . . . the penetration of the sex organ or anus of a person by an object." Ind. Code § 35-31.5-2-94(2).

Here, Worl challenges the sufficiency of the State's evidence that A.W. penetrated Worl's anus with the candle. A.W.'s testimony on direct examination about the

6

inappropriate sexual behavior follows:

Q: Where on his body did he have you touch him with the candle?
A: Butt.
Q: What color candle?
A: White.
Q: And what did he have you do with that candle?
A: Stick it up his butt.
Q: And did you stick it up his butt?
A: Yes.
Q: Was this during the day or during the night?
A: Day.
Q: Was it –was this at your house or was this someplace else?
A: At my house.
Q: Was anyone else home?
A: No.

*Tr.* at 243. A.W. then identified a photograph of the candle she had indicated to Detective McKinney was the candle used. She further testified about dipping the candle in a bottle of Corn Husker lotion prior to penetrating Worl's anus with the candle. She identified the photograph of the bottle of lotion which was collected as evidence.

Although the State could have asked more specific questions of A.W., it is clear contextually that A.W.'s statement that she placed the candle "up his butt" meant anal penetration and not merely rubbing the candle between Worl's butt cheeks. *Id.* While describing the incident where Worl used A.W.'s finger to penetrate his anus while A.W. was sleeping, A.W. testified as follows:

Q: Did he ever touch your butt with his finger at night?
A: Yes.
Q: What time—about what time do you think that was?
A: 3, 3:30 in the morning.
Q: Was that on the inside or the outside?
A: Both.
Q: Did he say anything when he did that?
A: The next morning.

7

Q: What did he say the next morning?
A: I stuck your finger up my butt so you can come downstairs and watch me poop.

*Id*. at 245-46. The jury ultimately returned a not-guilty verdict on a separate, additional count alleging the digital penetration of A.W.'s anus briefly described above, in the discussion of the allegation that Worl had used her finger to digitally penetrate his anus. However, A.W.'s testimony about the behavior alleged in that count is indicative of the terminology she used for various acts. A.W. also used the word "rubbing" to describe what she did to Worl's genitalia and what he did to her "private places." *Id*. at 241.

"The testimony of a sole child witness is sufficient to sustain a conviction for molestation." *Hoglund v. State*, 962 N.E.2d 1230, 1238-39 (Ind. 2012) (citing *Stewart v. State*, 768 N.E.2d 433, 436 (Ind. 2002)). Here, Worl attempts to equate the words used in *Downey v. State*, 726 N.E.2d 794 (Ind. Ct. App. 2000), a case which found the evidence to be insufficient, with A.W.'s testimony here. However, in *Downey*, the victim testified that the defendant rubbed his penis up and down in the area of the butt cheeks. The defendant admitted to the detective that he had rubbed his penis between the cheeks of the victim's butt and did not penetrate the victim's anus. Here, A.W.'s testimony is distinguishable in that she stated that she was asked to stick the candle up Worl's butt.

In addition to A.W.'s testimony, the State provided corroborating evidence to establish the elements of the Class A felony. The scientific and forensic evidence testified to by Livingston supported A.W.'s testimony that the candle was used for anal penetration. The candle and lotion were collected as evidence from A.W.'s home.

8

Livingston tested the candle at the Indiana State Police Laboratory, and testified that the candle contained both amylase and Worl's DNA.

Worl's argument that the candle was not used for anal penetration, but rather for rubbing between his buttocks, was made less likely by evidence of the presence of amylase. Amylase, which can be found throughout the human body in the digestive process can be found not only in the mouth, but the anus as well. Worl's argument that the amylase was present because he had snuffed out the candle's flame with saliva on his fingers was rejected by the jury. We decline the invitation to reweigh the evidence here. The evidence was sufficient to support Worl's Class A felony child molesting conviction.[5]

Worl also challenges the sufficiency of the evidence to support two of his three convictions of Class C felony child molesting. Worl does not challenge the sufficiency of the evidence for the conviction based on A.W. touching his penis. In order to establish that Worl had committed the remaining two convictions of Class C felony child molesting, the State was required to prove beyond a reasonable doubt that Worl, with A.W., who was under fourteen years of age, performed or submitted to any fondling or touching of either the older person or the child, with intent to arouse or satisfy the sexual desires of the child or the older person. Ind. Code § 35-42-4-3.

Count 3 alleged that Worl committed Class C felony child molesting by rubbing A.W. between her legs. Court 4 alleged that Worl rubbed A.W. both on top of and

---

[5] There was sufficient testimony in the record to establish both Worl's and A.W.'s ages at the time of the commission of the offenses, and Worl does not challenge the sufficiency of that evidence on appeal.

9

underneath A.W.'s clothing. A.W. testified that Worl had touched her in the butt, and that he had touched her "pretty much everywhere down there." *Tr*. at 245. A.W. testified that Worl touched her in her "private places." *Id*. at 241. A.W.'s mother testified that prior to the disclosure about the molestation, A.W. had indicated that her vagina was sore.

The State did not ask A.W. to further define or describe what she meant by her private places. However, when referring to where she touched Worl, she initially testified that it was his "private area," and then more specifically, described that to mean Worl's genitalia, which are located between Worl's legs. Therefore, it would be entirely reasonable for the jury to infer that A.W. meant genitalia when referring to either a private area or private places.

A.W. testified that Worl would touch her both inside and outside. The State did not elicit additional testimony from A.W. to clarify whether that meant inside or outside of her clothing or inside or outside of her vagina. Nonetheless, looking to the testimony before the jury, it was reasonable for the jury to infer that the vaginal soreness A.W. experienced was caused by Worl, whom she described as having touched her "everywhere" down there. A.W. testified that he rubbed or touched her inside and outside, and that the rubbing and touching was of her private places. Since A.W. had further defined Worl's private area as meaning genitalia, it would be reasonable to conclude that her private area was her genitalia, which are located between her legs. The evidence is sufficient to support Worl's convictions of Class C felony child molesting.

10

## II. Prosecutorial Misconduct During Closing Argument

Worl claims that the deputy prosecutor committed prosecutorial misconduct during closing argument in the guilt phase of Worl's trial. More specifically, Worl argues that the State improperly vouched for A.W. Because Worl failed to object to the argument, request an admonishment, or move for a mistrial, his argument is that the vouching amounted to fundamental error.

Our Supreme Court stated the following about appellate review of such claims:

> We evaluate a properly preserved claim of prosecutorial misconduct using a two-step analysis. We first determine whether misconduct occurred, then, if there was misconduct, we assess "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected" otherwise. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). To preserve a claim of prosecutorial misconduct, the defendant must ask the trial court, at the time the misconduct occurs, to admonish the jury or move for a mistrial if admonishment is inadequate. *Id.* Failure to request an admonishment or a mistrial waives the claim, unless the defendant can demonstrate that the misconduct rises to the level of fundamental error. *Id.* Fundamental error is a narrow exception intended to place a heavy burden on the defendant. It requires the defendant to establish that the misconduct "[made] a fair trial impossible or constitute[d] clearly blatant violations of basic and elementary principles of due process" or that the misconduct "present[ed] an undeniable and substantial potential for harm." *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002); *accord Cooper*, 854 N.E.2d at 835.

*Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012). This exception is available only in egregious circumstances. *Malloch v. State*, 980 N.E.2d 887, 904 (Ind. Ct. App. 2012) (citing *Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010)).

The State's remarks which are the subject of this aspect of Worl's argument on appeal follow:

I think one of the biggest things is there's no motive to lie. No motive for A.W. to make this up. There's—certainly there's been no evidence of coaching from her parents or the interviewer. And there's no evidence of motive for A.W. to make this up. . . . But in conclusion, the State has proven Counts I through IX beyond a reasonable doubt. That we have statements from A.W. that have proven to be true. . . . The State believes that her credibility has been bolstered to the point that what she stated can be believed beyond a reasonable doubt. . . .

*Tr*. at 490-93.

Our Supreme Court has observed that "jurors recognize that our adversarial system of litigation will inevitably experience some overly zealous advocacy from time to time." *Wisehart v. State*, 693 N.E.2d 23, 60 (Ind. 1998). Assuming without deciding that the State's comments constituted overly zealous advocacy, they are nowhere near the level of egregiousness such that they rise to the level of fundamental error. Focusing on the probable persuasive effect on the jury's decision, we find that the degree of impact, if any, was minimal. The statements made by the State were true statements highlighting the existence of corroborating evidence, the lack of motive to fabricate, and the lack of evidence of coaching of A.W. by others. Further, the trial court instructed the jurors that "the statement or comments of counsel on either side of the case should not be considered as evidence in the case." *Appellant's App*. at 39. Juries are presumed to follow the trial court's instructions. *Williams v. State*, 782 N.E.2d 1039, 1047-48 (Ind. Ct. App. 2003). In sum, Worl has failed to establish fundamental error.

Affirmed.

ROBB, C.J., and RILEY, J., concur.