## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 05 2016, 9:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Tommy Borders
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tommy Borders,

*Appellant-Petitioner*,

v.

State of Indiana,

*Appellee-Respondent*.

April 5, 2016

Court of Appeals Case No.
11A05-1502-PC-68

Appeal from the Clay Superior Court

The Honorable J. Blaine Akers, Judge

Trial Court Cause No.
11D01-1311-PC-853

**Brown, Judge.**

[1] Tommy Borders appeals the denial of his petition for post-conviction relief. Borders raises two issues which we revise and restate as:

I.  Whether Borders was denied the effective assistance of appellate counsel; and

II. Whether Borders was deprived of a procedurally fair post-conviction hearing.

We affirm.

### Facts and Procedural History

[2] In January 2009, Borders, Tabitha Golden, and her daughter lived in a residence in Clay County. Borders and Golden were unemployed and kept methamphetamine in a black vinyl bag.

[3] On January 5, 2009, Clay County Sheriff's Narcotics Detective Jerry Siddons went to Borders's residence around 4:00 p.m. regarding a separate investigation. While there, Detective Siddons detected the odor of burnt marijuana as well as odors consistent with the use of methamphetamine, and he ended his contact with Borders.

[4] Around 9:00 p.m., Cassandra "Susie" McDaniel, who had known Golden for years, went to Borders's residence. Trial Transcript at 735. McDaniel had previously babysat for Golden's child in return for methamphetamine, Borders and Golden had previously provided methamphetamine to her, and Golden and McDaniel used McDaniel's methamphetamine that day.

[5] The same day, Officer Jeremy Mace conducted a traffic stop of Borders's vehicle and requested the presence of Brazil City Police Officer Kenny Hill.

Officer Mace requested that Officer Hill conduct a dog sniff around Borders's vehicle because he said that he saw Borders and his passenger digging around in the car. Officer Hill's dog gave a positive indication on the vehicle. Officer Hill detected a chemical smell around the car when he walked his dog around and then could smell the odor of burnt marijuana coming from Borders when he exited the vehicle.

[6] Detective Siddons and Deputy James Switzer also responded to the scene. While speaking with Borders, Detective Siddons smelled the odor of burnt marijuana. Deputy Switzer also detected the odor of burnt marijuana and a chemical odor he had previously detected in the presence of either the ingestion or manufacture of methamphetamine. The police conducted a search of Borders's vehicle and did not find any drugs but seized $2,930.

[7] At 1:45 a.m. on January 6, 2009, the police obtained a search warrant for Borders's residence, and the police executed the warrant at 2:19 a.m. They discovered Golden, her child, and McDaniel within the residence. The search of the house revealed scales and paraphernalia, including smoking pipes and rolling papers, a hand-rolled marijuana cigarette, hypodermic needles, Q-tips, a metal spoon, and two bags of an off-white powdery substance later determined to be methamphetamine, weighing 29.02 grams.

[8] The State charged Borders with Count I, possession of methamphetamine as a class A felony; Count II, possession of methamphetamine as a class C felony; Count III, maintaining a common nuisance as a class D felony; Count IV,

possession of marijuana as a class A misdemeanor; Count V, possession of paraphernalia as a class A misdemeanor; and Count VI, being an habitual substance offender.

[9] In November 2009, the court held a jury trial, at which the State presented the testimony of Detective Siddons, Officer Hill, Officer Mace, Golden, and McDaniel.

[10] During closing argument, the prosecutor stated without objection:

> I told you at the beginning in opening statement what a pox methamphetamine is on a community. You have seen victims of that pox here. You have seen Susie (phonetic) McDaniel. That was a woman who's 32 years of age. And you folks can see what – have seen with your own eyes what 15 years of methamphetamine use did to her. You've seen Tabitha Golden. You've seen what methamphetamine use has done. She's lost her child, and of course, that child is another victim of methamphetamine. The families of the defendant, the families of these witnesses, they're victims, as is this community as a whole. You have citizen law enforcement officers in this community who are out there risking their lives to save the victims, save the community, and actually to help and save those who violate the laws.

*Id.* at 806-808.

[11] The prosecutor stated that "there are certain defenses that could be filed by a defendant that would cause us to have to say it happened at a particular time." *Id.* at 816. Borders's trial counsel objected, and the trial court admonished the jury that statements of counsel were not evidence, that the statements are

simply an argument to persuade them, and that they can judge the evidence and the laws presented to them. The court then stated: "And with that, I will overrule the objection." *Id.* at 817.

[12]     The prosecutor stated:

> The one thing we know is – about Susie McDaniel is this: We know that in the morning following her arrest, she gave a statement to Detective Siddons that was videotaped. And you heard testimony that a copy of that videotape was provided to the defense counsel. If she had given any information in that video statement that she contradicted in her testimony before you, you surely would have heard about it. There was no such evidence that she had given any prior inconsistent statement to the statement she testified to before you. Secondly, if there was any independent evidence that anything that she had said in that video statement given to the defendant's counsel was wrong or incorrect, that evidence should have been presented to you. So, in other words, is – was there anyone who contradicted what [McDaniel] testified to? They have her statement, they knew what she said, yet no evidence was presented to contradict what she had told Detective Siddons either on the night following the arrest or in regard to the testimony she presented here.

*Id.* at 833-835.

[13]     The prosecutor later stated:

> Finally, we presented evidence of motive. Why did we not introduce the money, hundred dollar bills? To show the defendant's motive for having this methamphetamine. His motive was to use it and sell it. The evidence of using it and having it to sell it is the money and the electronic scales that was used to measure it out. If he were just a user, he wouldn't need

that in his little black bag. That's why we introduced evidence of his unemployment, and that's why we introduced Susie's testimony that she had seen it, the black bag of Tommy's, lots of times.

*Id.* at 837-838.

[14] During defense counsel's closing argument, the prosecutor objected, and the court again told the jury that statements of counsel were not evidence, that they are simply arguments to attempt to persuade them, that "you have observed the evidence by the testimony and the exhibits given, and you should consider on that evidence and not on the statements of counsel." *Id.* at 867. Defense counsel later stated: "Mr. Borders is not of the – he's not some scourge of your community. He's a fellow citizen. He's a part of your community." *Id.* at 871.

[15] Following defense counsel's closing argument, the court again admonished the jury and stated:

> And before [the prosecutor] finishes his closing statement, ladies and gentlemen of the jury, I'm going to admonish you at this time that closing statements, there has – go ahead. In closing statements by counsel to this point, there may have been an inference made that the defendant was dealing methamphetamine. You will be given instructions as to the exact five charges that you are to consider and all the elements thereof. And I would admonish you and tell you that he is not charged with dealing methamphetamine and you should not consider any inference, if there has been any such inference made. And further, you are to judge this case based upon the evidence that's been presented. You may make any inferences therefrom for the charges that have been filed against the defendant.

*Id.* at 872-873.

[16] During the prosecutor's rebuttal, he stated: "It's not fair to have methamphetamine in the community doing the things that it's doing to children and families affected." *Id.* at 876-877. Defense counsel objected, and the court overruled the objection.

[17] The prosecutor later stated:

> [Golden] was in here not wanting to have to say the things she had to say, but she'd already testified before Judge Akers to these odd questions. She didn't want to, but that doesn't mean they're untruthful. And was there any evidence introduced by the defendant that those statements were untruthful? Not an iota. It wasn't just Detective Siddons that smelled it. It was Officer Hill at the traffic stop that smelled the meth and the marijuana. It was Clay County's drug recognition expert, Deputy Switzer, who smelled these drugs. And you know who was never mentioned by defense counsel? Onya (phonetic), the certified drug testing dog. Silence. Did you hear counsel ever address whether there was methamphetamine at that residence? Silence. We know it's meth. We knew it was an ounce of meth. We know it's at his residence. Now, the question is, based on the inferences and evidence, did he know it was there? The inferences and evidence, two persons who testify, the smells. Did you ever hear of any syringes and paraphernalia in the house? Did you ever hear them mentioned? Silence. This is a tragic story. This isn't we're on a wild goose chase to persecute people. Our life experiences tell us what methamphetamine does and does to a community.

*Id.* at 879-881.

[18]     Following the closing arguments, the court instructed the jury that statements made by the attorneys were not evidence, that their verdict should be based on the law and the facts as they find them, that Borders was not required to present any evidence, and that no defendant may be compelled to testify.

[19]     Following the court's instructions and outside the presence of the jury, the court stated that during closing argument, defense counsel approached the court, and the court instructed her that it would reserve her right to make a motion prior to the jury beginning its deliberations. Borders's counsel then asked the court to declare a mistrial based on the prosecutor's statements in closing that the charges were appropriate because the prosecutor was duly elected, that methamphetamine has an impact in the community, and that law enforcement officers were risking their lives. The court denied the motion for a mistrial.

[20]     The jury found Borders guilty of Count I, possession of methamphetamine as a class A felony; Count II, possession of methamphetamine as a class C felony; Count III, maintaining a common nuisance as a class D felony; and Count V, possession of paraphernalia as a class A misdemeanor. The jury found Borders not guilty of Count IV, possession of marijuana as a class A misdemeanor.

[21]     The court then proceeded to the second phase of the trial addressing whether Borders was an habitual substance offender, and Borders waived his right to a jury trial on the second phase. The court found Borders to be an habitual substance offender. The court sentenced him to an aggregate term of forty-five years of imprisonment.

[22] On appeal, Borders's appellate counsel argued that there was no probable cause to support the issuance of the search warrant, the trial court abused its discretion in admitting evidence seized during the traffic stop, and the trial court improperly sentenced Borders. *Borders v. State*, No. 11A05-1001-CR-203, slip op. at 2 (Ind. Ct. App. April 18, 2011), *trans. denied*. We affirmed. *Id.* With respect to the search warrant, we observed that the statement of an unidentified informer describing the means by which Borders acquired the methamphetamine and the assumptions of a police detective regarding Borders's dealing methamphetamine were insufficient but that the officers' observations of strong marijuana odors and odors consistent with the manufacturing of methamphetamine coming from Borders's home were sufficient to support a finding of probable cause. *Id.* at 4. As to the traffic stop, the court held that the narcotics detection dog's alert on the exterior of Borders's vehicle to the presence of contraband supplied the probable cause necessary for further police investigation of the contents of Borders's vehicle. *Id.* at 8. Borders's appellate counsel filed a petition for rehearing and a petition for transfer, both of which were denied.

[23] On October 13, 2011, Borders filed a *pro se* petition for post-conviction relief. On June 27, 2013, Borders filed an amended petition and alleged that he received ineffective assistance of appellate counsel and asserted that "[a]ppellate counsel failed to raise . . . the issue of improper argument by the prosecuting attorney. Specifically, the prosecution vouched for the credibility of the investigation and the state's witnesses." Appellant's Appendix at 30. On July

3, 2013, Borders, by counsel, filed a motion to amend his original petition filed on October 13, 2011, by substituting the petition filed on June 27, 2013. On July 9, 2013, the court granted Borders's motion to substitute the June 27, 2013 petition.

[24] On January 29, 2014, an evidentiary hearing was held. During the hearing, Borders's appellate counsel testified, and when asked whether he considered raising any other issues on direct appeal, he stated:

> Yes, . . . prior to my appointment, I had . . . perfected probably . . . over a hundred and fifty (150) uh appellate briefs and probably a hundred (100), hundred and fifty (150) or more trial, uh trial cases on . . . I reviewed the . . . record of proceedings and, and I have uh, reviewing my personal notes I have about, I believe almost fifty (50) pages that er [sic] in excess of fifty (50) pages of a handwritten notes regarding . . . the transcript. I have about five (5) pages of . . . hot, potential issues that I considered raising and . . . researched the merits of raising and . . . not raising and after, as part of my process and determining what issues to raise on the appeal, I narrowed those the issues as a strategy decisions [sic] down to the three (3) issues that I raised on appeal.

Post-Conviction Transcript at 8. After Borders's post-conviction counsel referred to the beginning of the prosecutor's closing argument and asked if he made any notation of it, appellate counsel stated:

> I did, I was aware of . . . that issue in the final argument, in those those [sic] object . . . or those issues as I recall were not objected to by . . . trial counsel and I decided not to raise them as fundamental error because I thought the issues that I rose were much more substantial if we had won on the suppression issues

then everything would have been moot and a new trial would have been granted.

*Id.* at 9. Borders's post-conviction counsel referenced other parts of the prosecutor's closing argument, and appellate counsel stated:

Yes, I'd considered them as issues, and then again, I didn't consider those to be in terms of winning issues, I didn't consider those to be of the same magnitude as issues regarding the suppression. An . . . and over the years the Appellate Courts have made it clear, that on appeal they desire you to be as succinct as possible and raise your best issues put your . . . best foot forward and raise the issues that you consider to be the strongest and uh, that if granted lead to a reversal and . . . it was in that strategy decision in my opinion that I raised the three (3) issues that I thought were most likely to win a reversal.

*Id.* at 9-10.

[25] Borders's post-conviction counsel asked appellate counsel whether he felt the issues "that the prosecutor, say vouching for the witnesses, in pages eight oh three (803) to um eight oh seven (807) and also . . . (inaudible) new evidence being a fifth (5th) amendment violation on page eight thirty four (834) and eight seventy-seven (877), you thought those were issues, just not the strongest issues?" *Id.* at 10. Appellate counsel stated: "Yes, yes." *Id.*

[26] Borders's post-conviction counsel asked to amend the petition for post-conviction relief to allege that trial counsel was ineffective on the same grounds that appellate counsel was ineffective. The court allowed Borders leave to amend the petition. On February 24, 2014, post-conviction counsel filed a

notice informing the court that he would not be amending the petition for post-conviction relief or requesting to present any further evidence.

[27] On January 23, 2015, the court denied Borders's petition for post-conviction relief. Specifically, the court stated:

> In support of its ruling, the Court finds that [Borders] has failed to prove his request for relief by a preponderance of evidence in that there is no sufficient evidence presented the appellate counsel'[s] performance was deficient, no sufficient evidence that the performance fell below the objective standard of reasonableness, and that there is no sufficient evidence the performance contained errors so serious it resulted in a denial of [Borders's] 6th Amendment rights. Further, the Court finds there is no error in the appellate counsel's performance that the result of any such error(s) would have caused a different outcome.
>
> Also, the Court finds that the trial counsel did not object to prosecutorial statements which [Borders] claims constituted misconduct. There is not sufficient evidence the prosecutorial statements claimed by [Borders] constituted fundamental error. The prosecutorial statements did not make a fair trial for [Borders] impossible.

Appellant's Appendix at 93.

## *Discussion*

### I.

[28] The first issue is whether Borders was denied the effective assistance of appellate counsel. Before discussing Borders's allegations of error, we observe that the purpose of a petition for post-conviction relief is to raise issues

unknown or unavailable to a defendant at the time of the original trial and appeal. *Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006). A post-conviction petition is not a substitute for an appeal. *Id.* Further, post-conviction proceedings do not afford a petitioner a "super-appeal." *Id.* The post-conviction rules contemplate a narrow remedy for subsequent collateral challenges to convictions. *Id.* If an issue was known and available but not raised on appeal, it is waived. *Id.*

[29] We also note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[30] Borders argues that his appellate counsel was ineffective for failing to raise the issue of prosecutorial misconduct as fundamental error. He argues that the prosecutor's statements regarding the community and law enforcement during closing argument were an attempt to improperly arouse the passion and prejudice of the jury, that the prosecutor's statements regarding the appearance of McDaniel and Golden were an improper comment on their condition, that the prosecutor's statements that his motive was to sell the methamphetamine was improper because he was not charged with dealing methamphetamine, and that the prosecutor improperly commented on his right to remain silent.

[31] The State argues that Borders's petition focused only on the prosecutor's statements that "vouched for the credibility of the investigation and the state's witnesses." Appellee's Brief at 11. The State asserts that Borders's arguments on appeal with respect to the other statements made by the prosecutor are waived for failure to raise them in the petition for post-conviction relief. The State also contends that Borders's claims fail waiver notwithstanding.

[32] Borders's petition for post-conviction relief alleged only the ineffective assistance of appellate counsel as the ground for relief and in the portion of the petition listing the facts which support the ground for relief stated merely: "Appellate counsel failed to raise on direct appeal the issue of improper argument by the prosecuting attorney. Specifically, the prosecution vouched for the credibility of the investigation and the state's witnesses." Appellant's Appendix at 30. To the extent Borders challenges his appellate counsel's failure to raise the prosecutor's other statements, we find those arguments waived

because his petition challenged only appellate counsel's failure to challenge the prosecutor's alleged vouching for the credibility of the investigation and the State's witnesses. *See Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001) ("Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal."), *reh'g denied*, *cert. denied*, 535 U.S. 1061, 122 S. Ct. 1925 (2002); Post-Conviction Rule 1(8) ("All grounds for relief available to a petitioner under this rule must be raised in his original petition.").

[33] Even assuming that Borders properly raised all of the prosecutor's statements, we cannot say that reversal is warranted. Generally, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.* We apply the same standard of review to claims of ineffective assistance of appellate counsel as we

apply to claims of ineffective assistance of trial counsel. *Williams v. State*, 724 N.E.2d 1070, 1078 (Ind. 2000), *reh'g denied*, *cert. denied*, 531 U.S. 1128, 121 S. Ct. 886 (2001).

[34] When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986).

[35] Ineffective assistance of appellate counsel claims fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Garrett v. State*, 992 N.E.2d 710, 724 (Ind. 2013). "To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, 'the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential.'" *Id.* (quoting *Ben-Yisrayl v. State*, 738 N.E.2d 253, 260-261 (Ind. 2000), *reh'g denied*, *cert. denied*, 534 U.S. 1164, 122 S. Ct. 1178 (2002)). "To evaluate the performance prong when counsel waived issues upon appeal, we apply the

following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are 'clearly stronger' than the raised issues." *Id.* (quoting *Timberlake v. State*, 753 N.E.2d 591, 605-606 (Ind. 2001), *reh'g denied*, *cert. denied*, 537 U.S. 839, 123 S. Ct. 162 (2002)). "If the analysis under this test demonstrates deficient performance, then we evaluate the prejudice prong which requires an examination of whether 'the issues which . . . appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial.'" *Id.* (quoting *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997), *reh'g denied*, *cert. denied*, 525 U.S. 1021, 119 S. Ct. 550 (1998)).

[36] Generally, in reviewing a properly preserved claim of prosecutorial misconduct, we determine: (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). Whether a prosecutor's argument constitutes misconduct is measured by reference to caselaw and the Rules of Professional Conduct. *Id.* The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.* Where, as conceded by Borders here, a claim of prosecutorial misconduct has not been properly preserved, our standard of review is different from that of a properly preserved claim. *Id.* More specifically, the defendant must establish not only the grounds for the misconduct, but also the additional grounds for fundamental error. *Id.*

[37] Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. *Id.* It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process . . . present[ing] an undeniable and substantial potential for harm." *Id.* "This exception is available only in 'egregious circumstances.'" *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (quoting *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003)), *reh'g denied.* "Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error." *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014), *reh'g denied.*

[38] We note that Borders's appellate counsel testified that he narrowed the issues down to the three issues raised on appeal as a strategic decision. Further, as discussed, the trial court admonished the jury multiple times and informed them that the statements of counsel were not evidence, that they could judge the evidence and the laws presented to them, and that they should consider the evidence and not the statements of counsel. During final instructions, the court stated: "Statements made by the attorneys are not evidence," and "[y]our verdict should be based on the law and the facts as you find them. It should not be based on sympathy or bias." Trial Transcript at 904, 907. The court also stated: "And I would admonish you and tell you that [Borders] is not charged with dealing methamphetamine and you should not consider any inference, if there has been any such inference made." *Id.* at 872-873.

[39] As for Borders's argument that his appellate counsel was ineffective for failing to raise the prosecutor's comments that allegedly commented on his right to remain silent, and to the extent that Borders cites *Davis v. State*, 685 N.E.2d 1095 (Ind. Ct. App. 1997), we do not find that case requires reversal. In *Davis*, a police officer testified that the defendant admitted "I took the car," when he was arrested for auto theft. 685 N.E.2d at 1097. During closing argument, the State argued that the defendant "said he took the car. There is nothing to controvert that. There is no evidence saying that isn't so. There's not even an argument that he didn't say that." *Id.* On appeal, we held that "before determining whether a prosecutor's comment is improper, it must first be determined whether a reasonable jury could have interpreted the comment as a suggestion to infer the defendant's guilt from his failure to testify." *Id.* at 1098. We observed that the prosecutor's comments called attention to the defendant's alleged admission and pointed out that there was no claim to the contrary and the prosecutor indirectly brought to the jury's attention the fact that the defendant did not deny this allegation. *Id.* We noted that the defendant was the only one who could have denied that this statement was made because only he and the police officer were present at the time. *Id.* Accordingly, we concluded that a reasonable jury could have taken that comment as an invitation to consider the defendant's failure to testify as an inference of guilt and the prosecutor's comments were improper. *Id.* We then observed that the defendant failed to object and addressed fundamental error as follows:

> We have held that where a prosecutor made no direct reference
> to a defendant's decision to remain silent, but instead

emphasized the uncontradicted nature of the testimony, there was no fundamental error. *Channell v. State*, 658 N.E.2d 925, 932 (Ind. Ct. App. 1995), *trans. denied*. In addition, the Indiana Supreme Court has indicated that "if in its totality the prosecutor's comment is addressed to other evidence rather than the defendant's failure to testify, it is not grounds for reversal." *Hopkins v. State*, 582 N.E.2d 345, 348 (Ind. 1991), *reh. denied*. In each of the prosecutor's comments complained of by Davis, the prosecutor emphasized the lack of contradictory evidence and made no direct mention of the defendant's failure to testify. Davis was not placed in grave peril by these comments, and it is improbable that the prosecutor's comments, taken in context, would have had a persuasive effect on the jury's decision. We conclude that the prosecutor's comments did not constitute fundamental error.

*Id.* at 1098-1099.

[40] Without citation to the record, Borders asserts that the prosecutor specifically highlighted the fact that Borders introduced no evidence that McDaniel's statements were not truthful and that the only one who could have disproved or discredited McDaniel's statements was Borders. McDaniel testified that Borders had previously provided methamphetamine to her and that Borders kept meth in his bag, but Borders does not cite to the record or develop an argument that only he could have contradicted her testimony. Thus, we cannot say that Borders has demonstrated that the prosecutor's comments were improper similar to those in *Davis*. Further, as in *Davis*, the prosecutor's comments complained of emphasized the lack of contradictory evidence and made no direct mention of Borders's failure to testify. Further, the trial court here stated:

The defendant is not required to present any evidence to prove innocence or to prove or to explain anything. The burden is upon the State to prove beyond a reasonable doubt that the defendant is guilty of the crimes charged.

Trial Transcript at 898-899. The court also gave the following instruction to the jury: "No defendant may be compelled to testify. The defendant has no obligation to testify. If the defendant did not testify, you must not consider this in any way." *Id.* at 903.

[41] Under the circumstances, we cannot say that Borders was placed in grave peril by the prosecutor's comments, and it is improbable that the prosecutor's comments, in light of the court's admonishments and instructions, would have had a persuasive effect on the jury's decision. We cannot say that the prosecutor's comments constituted fundamental error or that appellate counsel was ineffective in failing to raise fundamental error based upon the prosecutor's individual comments or their cumulative impact.

## II.

[42] The next issue is whether Borders was deprived of a procedurally fair post-conviction hearing. Borders argues that his post-conviction counsel's failure to raise the issue of whether he was denied the effective assistance of trial counsel constitutes a due process violation. He appears to assert that he is not claiming that his post-conviction counsel was ineffective under the Sixth Amendment but that his post-conviction counsel violated his due process rights under the Fourteenth Amendment. In other words, "Borders is raising the claim that

post-conviction counsel's ineffectiveness extends to his equal protection rights, under the 14th Amendment, for counsel's failure to raise an issue that was known to him at the time he argued the case." Appellant's Brief at 25. The State argues that Borders's claim is not a cognizable claim for relief and that post-conviction counsel appeared and represented Borders in a procedurally fair setting.

[43] The Indiana Supreme Court discussed performance by a post-conviction counsel as follows:

> This Court declared its approach to claims about performance by a post-conviction lawyer in *Baum v. State*, 533 N.E.2d 1200 (Ind. 1989). We observed that neither the Sixth Amendment of the U.S. Constitution nor article 1, section 13 of the Indiana Constitution guarantee the right to counsel in post-conviction proceedings, and explicitly declined to apply the well-known standard for trial and appellate counsel of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). *Baum*, 533 N.E.2d at 1201. The *Baum* Court noted that post-conviction pleadings are not regarded as criminal actions and need not be conducted under the standards followed in them. *Id.* We held unanimously that a claim of defective performance "poses no cognizable grounds for post-conviction relief" and that to recognize such a claim would sanction avoidance of legitimate defenses and constitute an abuse of the post-conviction remedy. *Id.* at 1200-01.
>
> We therefore adopted a standard based on principles inherent in protecting due course of law—one that inquires "if counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court." *Id.* at 1201. As Justice DeBruler explained later, speaking for a majority of

us, it is "not a ground for post-conviction relief that petitioner's counsel in a prior post-conviction proceeding did not provide adequate legal assistance," but such a contention could provide a prisoner with a basis for replying to a state claim of prior adjudication or abuse of process. *Hendrix v. State*, 557 N.E.2d 1012, 1014 (Ind. 1990) (DeBruler, J., concurring).

*Graves v. State*, 823 N.E.2d 1193, 1196 (Ind. 2005).

[44] At the post-conviction hearing, Borders's post-conviction counsel introduced and the court admitted the trial record, the appellate briefs in the direct appeal, the petition for rehearing and petition for transfer filed by appellate counsel, and this court's opinion on direct appeal. Post-conviction counsel called Borders's appellate counsel and questioned him. Post-conviction counsel also filed proposed findings of fact and conclusions of law concluding that appellate counsel provided ineffective assistance.

[45] Based upon the record, we cannot say that Borders was deprived of a procedurally fair post-conviction hearing. *See Graves*, 823 N.E.2d at 1197 (affirming the post-conviction court's denial of relief when post-conviction counsel appeared at the post-conviction relief hearing, directly examined the petitioner, and tendered affidavits).

### Conclusion

[46] For the foregoing reasons, we affirm the post-conviction court's denial of Borders's petition for post-conviction relief.

[47] Affirmed.

Kirsch, J., and Mathias, J., concur.