## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 06 2020, 5:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James Harper
Harper & Harper, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Klement,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

February 6, 2020

Court of Appeals Case No.
18A-CR-3155

Appeal from the LaPorte Circuit Court

The Honorable Thomas Alevizos, Judge

Trial Court Cause No.
46C01-1802-F4-136

**May, Judge.**

[1] Michael Klement appeals his conviction of Level 4 felony burglary of a dwelling.[1] He raises two issues on appeal, which we restate as: (1) whether reversible error occurred when the jury was not instructed on the definition of "dwelling," which is an element of the crime of which Klement was convicted; and (2) whether the trial court committed reversible error when it denied Klement's motion for mistrial after a witness mentioned prior bad acts by Klement. We affirm.

## Facts and Procedural History

[2] In October of 2017, Darleen Patrick had been living at her home in La Porte, Indiana, for 30 years. Off and on during these years, one or more of her children, including Michael Klement, have lived with her. On October 25, 2017, Patrick was admitted to the hospital for a week. Before Patrick left her home, she forbade Klement entering her home while she was in the hospital. Patrick locked both of the exterior doors to her house and she locked the interior door to her bedroom. Patrick kept the keys for the doors on a chain around her neck during her hospital stay. The only spare key for the locks was in possession of her daughter, who lived in an RV on Patrick's property.

[3] Upon returning home from the hospital, Patrick discovered a number of possessions missing from her home, including prescription medicines Norco

---

[1] Ind. Code § 35-43-2-1(1).

and Xanax, jewelry, an electronic tablet, a gun, and around $200.00 in cash. She also discovered Facebook messages in which Klement reached out to friends to inquire if they would be interested in buying a handgun. Patrick confronted Klement, and he admitted taking the missing items. Klement promised he would retrieve and return the items. He then sent a Facebook message to his ex-girlfriend, Bailee Hoops, stating he needed back the gun that he had given her to sell.

[4] Patrick gave Klement the opportunity to pay her $2,500.00 as reimbursement for the stolen goods he could not retrieve. When Klement did not give her the money, Patrick printed out the incriminating Facebook messages from her phone and gave them to Detective James Ferguston, who was assigned to the case. The police then arrested Klement for the burglary. Klement was charged with Level 4 felony burglary[2] and Level 5 felony carrying a handgun without a license with a prior conviction within fifteen years.[3]

[5] While in jail, Klement told his cellmate that his mom had kicked him out and had forbidden him from coming into the house again. Klement also told his cellmate that he had broken into Patrick's house using a butter knife and then he went on to discuss the details of his crime, including giving the gun to Hoops to sell in return for a share of the profit.

---

[2] Ind. Code § 35-43-2-1(l).

[3] Ind. Code § 35-47-2-l(e)(2).

[6]     Klement sent letters to Patrick and called her while awaiting trial. Klement wanted Patrick to tell the police she was "overmedicated" at the time she filed the police report. (Tr. Vol. 2 at 79.) Klement sent an "Affidavit of Statement" for Patrick to fill out and submit. (Ex. 6.) Klement called Patrick several times, telling her to turn in the form and pay the $300.00 misdemeanor fine so he would be released.

[7]     During opening statements at trial, the State mentioned Klement's history of stealing things from Patrick as the reason Patrick had barred him from entering and staying at her home. Klement objected, and the trial court overruled his objection. Klement responded to the State's allegation by emphasizing that attorney statements are not evidence.

[8]     In her testimony, Patrick mentioned Klement recently had been released from jail. Klement objected, and the trial court instructed the State to tell Patrick not to mention it again. The State agreed to tell her again, but also advised the court "she's been advised three or four times." (Tr. Vol. 2 at 50.) Nevertheless, Patrick mentioned two more times that Klement had been in jail. After the first of those two additional mentions, Klement objected and requested a continuing objection. He also moved for a mistrial, which the court subsequently denied. Klement did not seek admonishment. After the State rested, Klement again moved for a mistrial, and once again, the court denied it. The State suggested Klement have the court give a limiting instruction regarding Patrick's testimony, but Klement refused that suggestion. As the parties and court discussed final instructions, Klement again raised his motion for a mistrial,

which was denied, and Klement once again denied the offer of an admonishment.

[9] During that discussion of final instructions, the trial court explicitly asked if either party wanted to include the definition of "dwelling" in the jury instructions. (*Id.* at 241.) Klement stated the definition was "self-explanatory." (*Id.*) The court then commented it would prefer not to include the instruction, citing a recent Supreme Court case in which the trial court's jury instructions had "erroneously amplified the statutory definition of dwelling by declaring that a specific set of facts constituted dwelling instead of leaving to the jury that issue." (*Id.* at 242.)

[10] The jury found Klement guilty of both burglary and carrying a handgun without a license with a prior conviction within fifteen-years. For burglary, the court sentenced Klement to nine years with two years suspended, and for carrying a handgun without a license with a prior conviction within fifteen-years, the court sentenced Klement to four years with two years suspended. The court ordered those sentences served consecutively.

# Discussion and Decision

## 1. Omitted Jury Instruction

[11] Instruction of the jury falls under the trial court's discretion, and we will reverse only for an abuse of that discretion. *Benefiel v. State*, 716 N.E.2d 906, 914 (Ind. 1999), *reh'g denied*, *cert. denied* 531 U.S. 830 (2000). "To constitute an abuse of

discretion, the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. We will consider jury instructions as a whole and in reference to each other, not in isolation." *Munford v. State*, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010).

[12] Klement asserts the trial court committed fundamental error when it failed to give a jury instruction defining "dwelling," which is an element of Level 4 felony burglary,[4] because a criminal defendant "is entitled to have the jury instructed on all the elements of the charged offense." (Appellant's Br. at 13 (quoting *Taylor v. State*, 922 N.E.2d 710, 716 (Ind. Ct. App. 2010), *reh'g denied*, *trans. granted*, *trans. vacated*). Fundamental errors are those that occur only in "extraordinary circumstances" when the mistakes made are considered "so prejudicial to the rights of a defendant as to make a fair trial impossible." *Hardley v. State*, 905 N.E.2d 399, 402 (Ind. 2009) (quoting *Barany v. State*, 658 N.E.2d 60, 64 (Ind. 1995)).

[13] The State argues Klement cannot raise this argument on appeal because he invited any error that occurred. Invited errors are those that a party commits or invites or that occur as "a natural consequence of [the party's] own neglect or misconduct." *Brewington v. State*, 7 N.E.3d 946, 975 (Ind. 2014) (quoting *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005)), *reh'g denied*, *cert. denied* 574 U.S. 1077 (2015), *reh'g denied* 135 S. Ct. 1524 (2015). Invited error forecloses all future

---

[4] Level 4 felony burglary, as charged against Klement occurs when one breaks and enters the dwelling of another with the intent to commit a felony or theft therein. Ind. Code § 35-43-2-1(1).

opportunity for appellate review. *Batchelor v. State*, 119 N.E.3d 550, 556 (Ind. 2019). Klement claims he did not invite the trial court's failure to instruct the jury on the term "dwelling." We disagree.

[14] During discussion of final jury instructions, the court and parties discussed including the definition of "dwelling" in the jury instruction for burglary. Klement indicated such an instruction seemed unnecessary and he answered in the negative when asked whether he wanted any additional instructions. (Tr. Vol. 2 at 241-242.) Klement was then asked if he had any problems with the proposed jury instructions, to which he replied no. (*Id.*) When asked directly whether he wanted a definition for "dwelling," Klement stated there was no need for a definition because "it's self-explanatory…. It's any place of human habitation." (*Id.* at 241.) Not only did Klement not object to the failure to include an instruction defining "dwelling," he positively affirmed the decision to not include such a definition. Accordingly, Klement cannot challenge this alleged error on appeal.[5] *See Durden v. State*, 99 N.E.3d 645, 655-56 (Ind. 2018) (when party fails to object and expressly affirms the proposed jury instructions, error invited).

---

[5] Nor could the failure to so instruct constitute reversible error under the facts herein. Indiana law defines a "dwelling" as "a building, structure, or other enclosed space, permanent or temporary, movable or fixed that is a persons home or place of lodging." Ind. Code § 35-41-1-10. During direct examination, Patrick testified that she has lived in her home for thirty years. (Tr. Vol. 2 at 45.) Moreover, we reject Klement's suggestion that a one-week absence from one's home for a hospital stay could call into question whether Patrick's house was her dwelling. *See, e.g., Ferrell v. State*, 565 N.E.2d 1070, 1072 (Ind. 1991) (temporary absence does not alter the character of a home as a "dwelling"). Accordingly, there was no evidentiary dispute at trial. Patrick's home met the definition of "dwelling."

## 2. Denial of Motion for Mistrial

The trial court is best situated to decide whether to grant or deny a motion for a mistrial because it is in the best position to assess the impact of an event on the jury. *Myers v. State*, 887 N.E.2d 170, 189 (Ind. Ct. App. 2008), *reh'g denied, trans. denied*. Declaring a mistrial is drastic and will occur only if there is no other remedy. *Id*. Denial of a motion for mistrial will be reversed only upon a showing of an abuse of discretion. *Id.* The defendant must demonstrate that he was placed in a position of grave peril to which he should not have been subjected and that no other action by the trial court could have remedied the perilous situation. *Id.*

Klement argues he was entitled to a mistrial because of prosecutorial misconduct. Review of a properly preserved claim of prosecutorial misconduct is conducted in two steps. *Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2000). First, we determine whether the prosecutor engaged in misconduct. *Id*. If we conclude there was misconduct, then we determine whether said misconduct "placed the defendant in a position of grave peril to which he or she would not have been subjected." *Id*. (quoting *Coleman v. State*, 750 N.E.2d 370, 374 (Ind. 2001)). Misconduct is determined by reference to case law and the Rules of Professional Conduct." *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006), *trans. denied*. The likelihood of the misconduct having a persuasive effect on the jury's decision determines the gravity of peril. *Id.*

[17] A defendant properly preserves a claim of prosecutorial misconduct by first objecting and then seeking an admonishment. *Id.* If the defendant is unsatisfied with the admonishment, he should move for a mistrial. *Id.* "Failure to request an admonishment or to move for mistrial results in waiver." *Id.* Klement had many opportunities to ask for an admonishment, but he did not. Moreover, he declined to have one given when suggested by the court. Because Klement did not properly preserve his claim of prosecutorial misconduct, Klement has to establish both the grounds for misconduct and the additional grounds for fundamental error. *See Booher*, 773 N.E.2d at 817.

[18] Klement's allegation of misconduct hinges on two events. First, the prosecutor alluded to Patrick's tumultuous relationship with Klement during the opening statement. Specifically, the prosecutor said, "she had problems [with] her son, Michael Klement, in the past, stealing things from her, things disappearing." (Tr. Vol. 2 at 15.) Second, when the State was questioning Patrick on direct examination, it asked if Klement was living at her house, and she mentioned Klement's recent release from jail.

[19] To prove misconduct, Klement must show the State placed him in a position of grave peril when it acted deliberately to prejudice the jury by eliciting inadmissible evidence. *Jewell v. State*, 672 N.E.2d 417, 424 (Ind. Ct. App. 1996), *trans. denied*. Klement cannot meet this burden. The State did not ask a question intended to elicit an inadmissible answer from Patrick. The State attempted to redirect Patrick in order to get a response to the question actually asked. On cross-examination, Klement's counsel similarly struggled with

Patrick being non-responsive. The State did not elaborate on Patrick's inappropriate testimony, focusing instead on moving Patrick away from the reference. Klement fails to make any showing of prosecutorial misconduct.

[20] Furthermore, Facebook messages and witness testimony demonstrate Klement took and then tried to sell the items stolen from Patrick's home. Two witnesses confirmed that Klement knew how to use a butter knife to break into Patrick's home. Klement admitted to Patrick that he committed the burglary. In light of the overwhelming evidence of Klement's guilt, Klement cannot demonstrate that he was placed in a position of grave peril to which he should not have been subjected. *See*, *e.g.*, *Norris v. State*, 113 N.E.3d 1245, 1252-53 (Ind. Ct. App. 2018) (defendant failed to show allegedly improper statements "subjected him to grave peril to which he would not have been subjected otherwise"), *reh'g denied*, *trans. denied*.

# Conclusion

[21] Because Klement agreed a jury instruction defining "dwelling" was unnecessary, he cannot allege error in the trial court's failure to include such an instruction. Klement failed to establish either the grounds for prosecutorial misconduct or fundamental error, and he did not properly preserve his claim of prosecutorial misconduct through jury admonishment. Therefore, the court did not err when it denied Klement's motion for mistrial. The trial court's judgment is affirmed.

Affirmed.

Najam, J., and Bailey, J., concur.